2018 PA Super 248

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                      : PENNSYLVANIA
                                        :

             v.                      :
                                          :

RONALD PAUL CRAMER III,         :
                                        :

          Appellant         :  No. 436 MDA 2017

Appeal from the Judgment of Sentence March 10, 2017
In the Court of Common Pleas of Centre County
Criminal Division at No.: CP-14-CR-0001047-2015

BEFORE: OTT, J., DUBOW, J., and STRASSBURGER, J.*

OPINION BY DUBOW, J.:                 **FILED SEPTEMBER 06, 2018**

Appellant, Ronald Paul Cramer III, appeals from the Judgment of

Sentence of three to six years' incarceration followed by two years' probation

entered by the Centre County Court of Common Pleas following his convictions

for Sexual Assault and Indecent Assault.[1]  After careful review, we affirm.

The relevant facts, as gleaned from the certified record and the trial

court's Pa.R.A.P. 1925(a) Opinion, are as follows.  The Victim met Appellant

at a bar.  The Victim and her roommate, Tiffany Rivera, went to Appellant's

studio apartment.  After arriving at the apartment, the Victim went to the

bathroom.  Appellant followed her into the bathroom.  She was washing her

hands and Appellant undid his pants.  He started penetrating her from behind.

The Victim told Appellant "he didn't want to do that."  N.T. Trial, 11/8/16, at

---

[1] 18 Pa.C.S. § 3124.1 and 18 Pa.C.S. § 3126(a)(1), respectively.

---

* Retired Senior Judge assigned to the Superior Court.

96. Appellant did not stop until the Victim "turned around and told him that she didn't want to do this again and that I wasn't on the pill." *Id.* at 96-97. Appellant then started kissing her again. Appellant wanted to have oral sex and the Victim "went along with it . . . ." *Id.* at 144. She stopped giving him oral sex and told him "you don't want this. I don't want this. This is going to end badly for both of us." *Id.* at 147. She then left the bathroom. Tiffany Rivera testified that she heard the Victim say "no stop, you don't want to do this." *Id.* at 184.

When they left the apartment, a man she met in the hallway, Erik Frasca, asked her if she was alright. *Id.* at 149-50, 232-33. He had noticed one of them "appeared rattled." *Id.* at 233. The Victim and Tiffany went into his apartment and when Tiffany went to the bathroom, the Victim told Frasca and his girlfriend about the incident. *Id.* The Victim then started crying. *Id.* They stayed in the apartment long enough for Tiffany to use the restroom. *Id.* When they got on the bus, she told Tiffany about the incident. *Id.* at 151.

At trial, the jury heard testimony from, *inter alia*, Dr. Veronique Valliere, who testified as an expert regarding the manner in which a victim's response to sexual violence may be counterintuitive. N.T. Trial, 11/9/16, at 271-318.

On November 10, 2016, the jury convicted Appellant of Sexual Assault and Indecent Assault.[2]  The trial court sentenced Appellant to a term of three to six years' imprisonment followed by two years' probation.

Appellant filed a Post-Trial Motion challenging, *inter alia*, the exclusion of DNA evidence, the admissibility of Dr. Valliere's testimony under **Frye**, and the weight of the evidence.  The court denied the Motion and Appellant filed a timely Notice of Appeal.  Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents seven issues for our review:

I. Were the verdicts of guilty as to Sexual Assault and Indecent Assault Without the Consent of Other against the weight of the evidence?

II. Were the verdicts supported by sufficient evidence?

III. Did the [t]rial [c]ourt err when it excluded from the Appellant's case DNA evidence regarding [the Victim's] sexual activity with David Bodin?

IV. Did the Trial Court err in permitting the Commonwealth to present the testimony of [Dr.] Veronique Valliere where:

a. The trial Court did not require a **Frye** hearing prior to determining the admissibility of this evidence and for admitting said evidence;

b. Said testimony exceeded the permissible scope of 42 Pa.C.S. § 5920(b)(3) in that the Commonwealth used hypothetical facts identical to the testimony of the [Victim], thus securing Dr. Valliere's testimony as to the credibility of

_____

[2] The jury found Appellant not guilty of Rape by Forcible Compulsion and Involuntary Deviate Sexual Intercourse by Forcible Compulsion.

the victim thereby bolstering her credibility in violation of § 5920(b)(3)?

c. Such evidence was presented to the jury without the jury being provided with instructions as to the limited nature of such evidence, allowing the jury to consider such evidence in bolstering the credibility of the victim in violation of § 5920(b)(3)?

V. Did the Commonwealth fail to comply with its discovery obligations when it failed to preserve or turn over video surveillance evidence of significant exculpatory value to the Defense and which showed the [Victim's] playful, upbeat demeanor immediately after the alleged assault, and did the [t]rial [c]ourt err in refusing to impose any penalty on the prosecution or to dismiss the charges against Appellant, which remedies are amply supported by caselaw discussing the repercussions for a **Brady**[3] violation?

VI. Did the [t]rial [c]ourt err in refusing to turn over juror contact information which the Defense needed to investigate the possibility that jurors were coerced into reaching a verdict?

VII. The [t]rial [c]ourt erred in sentencing Appellant [*sic*] three to six years[′] incarceration, given the voluminous evidence he presented as to his good character, his law-abiding conduct since his arrest, and the minimal evidence suggesting his guilt[.]

Appellant's Brief at 5-6.

### **Weight of the Evidence**

Appellant first contends that the verdict was against the weight of the

evidence because Appellant presented convincing evidence that he and the

Victim had engaged in consensual activity, the Victim fabricated her claim that

the encounter was not consensual to preserve her relationship with her ex-

---

[3] **Brady v. Maryland**, 373 U.S. 83 (1963).

- 4 -

boyfriend, and the Victim's high blood alcohol level made her observations and recollection about the incident unreliable.

When considering challenges to the weight of the evidence, we apply the following precepts. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015), *appeal denied*, 138 A.3d 4 (Pa. 2016) (citation omitted). "Resolving contradictory testimony and questions of credibility are matters for the factfinder." *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa. Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. *Talbert*, 129 A.3d at 546.

Moreover, when a trial court finds that the evidence was not against the weight of the evidence, we must give the gravest consideration to the trial court's conclusion because it is the trial court, and not the appellate court, that "had the opportunity to hear and see the evidence presented." *Id.* at 546 (citation omitted). Furthermore, a defendant will only prevail on a challenge to the weight of the evidence when the evidence is "so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Id.* (citation omitted).

In particular, Appellant argues that the only evidence from which the jury could infer that the Victim did not consent was the Victim's testimony about what she was thinking. Appellant highlights evidence that supports his

own narrative that the Victim did consent. Appellant's Brief at 21-23. Our review of the record contradicts this assertion. The Commonwealth presented sufficient evidence for the jury to conclude that the Victim did not consent. Just because the jury chose to disbelieve Appellant's narrative does not mean that the jury only relied upon the Victim's thoughts to determine that the Victim did not consent.

Similarly, Appellant argues that the verdict was against the weight of the evidence because, according to Appellant's narrative, the Victim fabricated her testimony that she did not consent because the Victim "regretted her alcohol-fueled actions and [was] concerned about her former boyfriend's reaction to her infidelity." Appellant's Brief at 21. Once again, the jury, who observed the Victim testify, rejected this proposition and it is not for this court to disregard the jury's credibility determination.

Appellant finally argues that the Victim's testimony about the incident is unreliable because the Victim's blood alcohol level was so high that she could not accurately observe and recall the incident. Appellant's Brief at 22. Defense counsel, however, cross-examined the Victim about her intoxication and thus, the jury was aware of it; the jury, however, still chose to give weight to her testimony. It is not for us to re-weigh this evidence.

Appellant essentially asks us to reassess the credibility of the Victim and reweigh the evidence presented at trial. We cannot do so. **See Talbert**, 129 A.3d at 546. Our review of the record leads to the conclusion that the trial

court did not abuse its discretion when it held that the verdict was not so contrary to the evidence as to shock the court's conscience. We, thus, conclude that Appellant is not entitled to relief on his weight of the evidence claim.

### Sufficiency of the Evidence

Appellant argues that the evidence was not sufficient to establish beyond a reasonable doubt that Appellant engaged in sexual activity without the Victim's consent. Appellant's Brief at 24. Appellant further argues that the evidence was insufficient to establish that Appellant knew that the Victim did not consent to the sexual activities. *Id.* at 26, 28.

We review claims regarding the sufficiency of the evidence by considering whether, "viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Melvin*, 103 A.3d 1, 39 (Pa. Super. 2014) (citation omitted). Further, the court may sustain a conviction wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—"is free to believe all, part, or none of the evidence." *Id.* at 40 (citation omitted).

The Crimes Code defines Sexual Assault as occurring when the defendant "engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent." 18 Pa.C.S. § 3124.1. The

Crimes Code similarly defines Indecent Assault as occurring when the defendant, without the consent of the complainant, "has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire." 18 Pa.C.S. § 3126(a)(1).

It is well established that "resistance to sexual assault is not required to sustain a conviction." *Commonwealth v. Smith*, 863 A.2d 1172, 1176 (Pa. Super. 2004). Furthermore, the uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses. *Commonwealth v. Castelhun*, 889 A.2d 1228, 1232 (Pa. Super. 2005) (citation omitted).

When we consider the evidence in the light most favorable to the Commonwealth in this case, we conclude that the evidence was sufficient for the jury to conclude that the Victim did not consent to the sexual encounter. The trial court aptly summarized the relevant facts to support the jury's conclusion that the Victim did not consent:

> The relevant facts are that [Appellant] and Victim both testified that sexual contact occurred. Victim and [Appellant] also agreed that Victim told [Appellant] she was not on the pill, and Victim testified she told [Appellant] he "did not want to do this," which a witness testified that she heard. Victim testified [that Appellant] used his hands to position her so he could penetrate her from behind, and later put his hand on her head to encourage her to perform oral sex. Victim characterized the incident as a rape. [Appellant] characterized the incident as consensual because Victim never physically resisted and did nothing else to show she

did not consent. Here the jury obviously believed Victim's testimony that she did not consent to the sexual contact when she characterized the incident as rape. *See Andrulewicz*, *supra* at 166. In [the] light most favorable to the Commonwealth, Victim's testimony alone was sufficient to support the verdict.

Trial Court Opinion, 5/5/17, at 5-6.

We agree. Therefore, the trial court properly concluded that the evidence was sufficient to support the verdict.

### DNA Evidence

In his third claim, Appellant argues that the trial court erred when it found that the Rape Shield Law precluded defense counsel from introducing evidence of the Victim's prior sexual conduct. In particular, Appellant argues that the trial court erred in precluding Appellant's DNA expert from testifying about forensic testing on the Victim's underwear that showed that there were three contributors of sperm on her underwear. We agree with the trial court that this evidence was not relevant.

The purpose of the Rape Shield Law is to "prevent a trial from shifting its focus from the culpability of the accused toward the virtue and chastity of the victim." *Commonwealth v. Burns*, 988 A.2d 684, 689 (Pa. Super. 2009) (*en banc*). Significantly, it "is intended to exclude irrelevant and abusive inquiries regarding prior sexual conduct of sexual assault complainants." *Id.*

The Rape Shield Law precludes the introduction into evidence of specific instances of the victim's prior sexual conduct as well as opinion and reputation evidence of the victim's prior sexual conduct:

Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

18 Pa.C.S. § 3104(a).

The Rape Shield Law includes one statutory exception to the general prohibition against evidence of victim's past sexual conduct, namely, the admission of evidence of past sexual conduct with the defendant where consent is at issue. *See* 18 Pa.C.S. § 3104(a). In addition, this Court has recognized several other exceptions in an effort "to reconcile the effect of the statute in excluding evidence with the accused's sixth amendment right to confrontation and cross-examination." *Commonwealth v. Guy*, 686 A.2d 397, 400 (Pa. Super. 1996). The courts have recognized exceptions to the Rape Shield Law when the proffered evidence addresses the victim's credibility or whether the activity in which the defendant and the victim engaged was sexual in nature. *Commonwealth v. Allburn*, 721 A.2d 363, 367 (Pa. Super. 1998). In particular, the courts permit defendants to use evidence of the victim's prior sexual conduct if the evidence shows that "the alleged victim is biased and thus has a motive to lie, fabricate, or seek retribution." *Guy*, 686 A.2d at 400.

In *Commonwealth v. K.S.F.*, 102 A.3d 480, 483 (Pa. Super. 2014), this Court held that in light of a defendant's constitutional rights, the Rape

- 10 -

Shield Law must at times yield to a defendant's right to cross-examine witnesses and instructs the trial court to conduct a balancing test that considers whether the proposed evidence is relevant to attack credibility, whether the probative value outweighs the prejudicial impact and whether there are alternative means to challenge credibility:

> Evidence that tends to impeach a witness' credibility is not necessarily inadmissible because of the Rape Shield Law. [**Commonwealth v. Black**, 487 A.2d 396, 401 (Pa. Super. 1985)]. When determining the admissibility of evidence that the Rape Shield Law may bar, trial courts hold an *in camera* hearing and conduct a balancing test consisting of the following factors: "(1) whether the proposed evidence is relevant to show bias or motive or to attack credibility; (2) whether the probative value of the evidence outweighs its prejudicial effect; and (3) whether there are alternative means of proving bias or motive or to challenge credibility." **Id.**

**Id.** at 483-84; **accord Commonwealth v. Black**, 487 A.2d 396 (Pa. Super. 1985) (*en banc*).

Also, this court has held that evidence of past sexual conduct by the victim with third persons is of little relevance to the issue of **consent** between the victim and a defendant when the victim and defendant did not have a prior sexual relationship. **Commonwealth v. Boone**, 466 A.2d 198, 201 (Pa. Super. 1983).

When reviewing whether the trial court properly found that the Rape Shield Law precluded the evidence of the victim's prior sexual activity, our standard of review is whether the trial court committed an abuse of discretion. **Burns**, 988 A.2d at 689. A trial court commits an abuse of discretion when

the trial court makes not merely an error of judgment, but misapplies the law or exercises its discretion in a manifestly unreasonable way or is the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record. *Id.*; *accord K.S.F.*, 102 A.3d at 483.

Appellant first argues that the trial court erred in precluding him from calling his DNA expert to testify because it was the DNA expert, and not the Victim herself, who would testify that testing on the Victim's underpants revealed three contributors, including the Victim's ex-boyfriend. Appellant's Brief at 34. There is, however, no legal basis for this purported "exception" to the Rape Shield Law. In other words, it does not matter if the defense presents the evidence of a victim's prior sexual conduct by cross-examining the victim or through a DNA expert; the same analysis of the Rape Shield Law applies.

We, thus, analyze the proposed testimony of Appellant's DNA expert according to the three-part balancing test of the Rape Shield Law. Appellant argues that the DNA expert's testimony is relevant because "that forensic evidence including all three samples might have suggested to the jury that Appellant's DNA, of a differing quality than the other two samples, might have been left on the Complainant's clothing not as a result of sexual activity, but rather only from skin or hair deposits. Only when compared to the other two samples would the jury likely interpret the evidence as indicating the unlikelihood of sexual activity between Appellant and the Complainant." Appellant's Brief at 35.

Appellant's defense in this case, however, was that the Victim consented to the sexual activity. Appellant admitted that he and the Victim engaged in sexual activity. N.T. Trial, 11/10/16, at 120-27. Thus, there is no issue about whether it was Appellant with whom the Victim engaged in sexual activity or if sexual activity occurred. Appellant's argument that the DNA evidence was relevant to show that the Victim engaged in sexual relations with other individuals is irrelevant to the issue of whether the Victim consented to having sex with Appellant.

Appellant further argues that the DNA expert's testimony about finding other sperm on the Victim's underpants was relevant to "show that the Complainant lied to the hospital staff." Appellant's Brief at 36. In two questionnaires that the Victim completed, she answered that she had not had sexual intercourse with anyone in either the past five days or two weeks. Appellant argues, however, that the DNA forensic expert could testify that based on his analysis of Appellant's underpants, she had sexual intercourse seven to ten days ago with her ex-boyfriend and thus, the Victim lied on the questionnaires. *Id.*

The Pennsylvania Rules of Evidence, however, provide that "the credibility of a witness may be impeached by any evidence **relevant to that issue.**" Pa.R.E. 607. Since Appellant's defense in this case was that the Victim consented—and not whether it was Appellant who sexually assaulted her or whether the sexual activity occurred—the DNA expert's testimony was not relevant to the issue of whether the Victim consented to the sexual

encounter with the Appellant and impeaching her through the DNA expert was equally irrelevant.

If the issue was whether it was Appellant with whom she had a sexual encounter or whether a sexual encounter occurred at all, the DNA evidence might have been relevant under Pa.R.E. 401. Since the trial focused solely on whether the Victim consented, the DNA expert's testimony to impeach the Victim's answers on the questionnaires would have been irrelevant. Therefore, the trial court properly precluded Appellant from attempting to impeach the Victim on an irrelevant issue.

Appellant's final argument is that the DNA expert's testimony was relevant to demonstrate that the Victim had a motive to fabricate her testimony that she did not consent in order to preserve her relationship with her ex-boyfriend. Under the balancing test referenced above, the probative value of the evidence did not outweigh its prejudicial effect.

When Appellant's counsel cross-examined the Victim, he asked her whether she testified falsely to preserve her relationship with her ex-boyfriend and the Victim responded that she did not. N.T. Trial, 11/8/16, at 111. The trial court appropriately permitted this limited inquiry to present this potential motive to fabricate as an issue for the jury.

The trial court also appropriately limited Appellant's inquiry. To expand the inquiry to whether the Victim's relationship with her ex-boyfriend was sexual would not add any relevant information, and would improperly shift the focus of the trial to the Victim's virtue and chastity, which is clearly forbidden.

The trial court appropriately balanced the competing interests at issue pursuant to the Rape Shield Law. **See** Trial Court Opinion, 5/5/17, at 7.

Given the highly prejudicial impact that a sexual relationship would have on a jury, it was sufficient to cross-examine the Victim about the relationship itself as being a motivation to fabricate. The sexual nature of such a relationship does not give the Victim a greater motivation to fabricate; it is the relationship itself that does that.

In conclusion, the trial court properly found that the testimony of the DNA expert was irrelevant to facts of this case and properly precluded the testimony.

**<u>Admission of Expert Testimony</u>**

Appellant next challenges the admissibility of the expert testimony of Dr. Veronique Valliere, who testified about her professional experiences and opinions with respect to victims' counterintuitive responses to sexual violence. Appellant argues that the trial court erred in not holding a **Frye** hearing prior to admitting the expert testimony. Appellant's Brief at 41.

When reviewing challenges to the admission of expert testimony, we leave such decisions "largely to the discretion of the trial court, and its rulings thereon will not be reversed absent an abuse of discretion." **Commonwealth v. Watson**, 945 A.2d 174, 176 (Pa. Super. 2008) (citation omitted).

The Pennsylvania Rules of Evidence govern the admission of expert witness testimony. Our Supreme Court has held that, pursuant to Pa.R.E.

702, Pennsylvania courts must apply the *Frye* test in determining whether to admit novel scientific evidence in a criminal trial. *Commonwealth v. Jacoby*, 170 A.3d 1065, 1090-91 (Pa. 2017).

The General Assembly, when enacting 42 Pa.C.S. § 5920, did not purport to address or alter the applicability of *Frye* or Pa.R.E. 702(c).[4] Section

---

[4] Section 5920, entitled "Expert testimony in certain criminal proceedings," provides as follows:

**(a) Scope.--**This section applies to all of the following:

(1) A criminal proceeding for an offense for which registration is required under Subchapter H of Chapter 97 (relating to registration of sexual offenders).

(2) A criminal proceeding for an offense under 18 Pa.C.S. Ch. 31 (relating to sexual offenses).

**(b) Qualifications and use of experts.--**

(1) In a criminal proceeding subject to this section, a witness may be qualified by the court as an expert if the witness has specialized knowledge beyond that possessed by the average layperson based on the witness's experience with, or specialized training or education in, criminal justice, behavioral sciences or victim services issues, related to sexual violence, that will assist the trier of fact in understanding the dynamics of sexual violence, victim responses to sexual violence and the impact of sexual violence on victims during and after being assaulted.

(2) If qualified as an expert, the witness may testify to facts and opinions regarding specific types of victim responses and victim behaviors.

(3) The witness's opinion regarding the credibility of any other witness, including the victim, shall not be admissible.

5920 only addresses the relevancy of this expert testimony, and not (i) whether the expert's conclusions are novel, and (ii) whether the methodology used to arrive at his or her conclusions is generally accepted. Section 5920 is silent on the issue of whether the proponent of an expert witness who testifies about different responses of victims to sexual violence must first demonstrate that the expert's conclusion is not novel or whether the novel conclusion is based on "methodology [that] is generally accepted in the relevant field." Pa.R.E. 702(c). Insofar as the parties dispute whether trial courts should continue to apply *Frye* and Pa.R.E. 702 to this Section 5920 expert testimony,

─────────────────────────────────────────────

> (4) A witness qualified by the court as an expert under this section may be called by the attorney for the Commonwealth or the defendant to provide the expert testimony.

42 Pa.C.S. § 5920 (footnote omitted).

Rule 702, entitled "Testimony by Expert Witnesses," provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;
> >
> > (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
> >
> > (c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702.

- 17 -

we hold that they do apply. A trial court must treat an expert who testifies pursuant to Section 5920 as it treats any other expert. Otherwise, there is no way to ensure that an expert's opinion is based on a generally accepted methodology. Thus, we proceed with our *Frye* analysis.

This Court has explained that scientific evidence is "novel" when "there is a legitimate dispute regarding the reliability of the expert's conclusions." *Commonwealth v. Safka*, 95 A.3d 304, 307 (Pa. Super. 2014) (citation and quotation omitted). To be admissible at trial, the methodology underlying the novel scientific evidence "must have gained general acceptance in the relevant scientific community." *Commonwealth v. Powell*, 171 A.3d 294, 307 (Pa. Super. 2017).

A trial court is not required to conduct a *Frye* hearing any time a party seeks to introduce scientific evidence. "Rather, a hearing is warranted only when the trial court has articulable grounds to believe that an expert witness has not applied accepted scientific methodology in a conventional fashion in reaching his or her conclusions." *Jacoby*, 170 A.3d at 1091.

A party opposing the scientific evidence must demonstrate that the expert's testimony is based on novel scientific evidence, *i.e.*, "that there is a legitimate dispute regarding the reliability of the expert's conclusions." *Safka*, 95 A.3d at 307. "If the moving party has identified novel scientific evidence, then the proponent of the scientific evidence must show that the expert's methodology has general acceptance in the relevant scientific

community despite the legitimate dispute." *Id.* (citation and quotation omitted). *See also Jacoby*, 170 A.3d at 1091; *Powell*, 171 A.3d at 307 (rejecting claim that Commonwealth, the proponent of expert testimony, had the initial burden and explaining that a defendant opposing such testimony had the burden of showing the testimony was based on novel scientific evidence in order to proceed to a *Frye* hearing).

In the case at bar, Appellant argues that the trial court erred in not holding a *Frye* hearing before permitting Dr. Valliere to testify on the issue of the manner in which victims of sexual assault respond to a sexual assault. In particular, Appellant argued in his Motion *in Limine* that "the testimony of Dr. Valliere is likely to contain opinions based on the human behavioral sciences of psychology, human development and science," and the Commonwealth is required to prove that Dr. Valliere's conclusions are based on a generally accepted scientific methodology in the relevant scientific community. Motion *in Limine*, filed 10/27/16, at 2-4; R.R. at 73a. On appeal, Appellant avers that Dr. Valliere's testimony was not "grounded in peer-reviewed, empirical studies[,]" "was scientifically unreliable[,] and did not rest on any empirically verified research." Appellant's Brief at 46. Appellant did not elaborate on these general assertions.

Dr. Valliere, a licensed psychologist and a board-certified forensic psychologist, testified at trial about her background and extensive professional experience. *See* N.T. Trial, 11/9/16, at 272-78. Dr. Valliere testified about

her work with hundreds of abuse victims and thousands of offenders in many treatment settings. *Id.* at 276. Dr. Valliere has testified in courts throughout the Commonwealth of Pennsylvania as an expert in "clinical psychology, forensic psychology, victim dynamics, offender behavior, [sex offender evaluations,] violent offender risk, probably child abuse, and child sexual assault." *Id.* at 277. Dr. Valliere explained the concept of counterintuitive responses of victims, and specifically stated that she was familiar with victim behaviors and dynamics involving sexual assault through research, study, and experience. *Id.* at 281.

After carefully reviewing the certified record, we discern no abuse of discretion on the part of the trial court in rejecting Appellant's request for a *Frye* hearing. Appellant failed to make an initial showing that Dr. Valliere's expert testimony was based on novel scientific evidence. Dr. Valliere specifically testified that, in addition to her extensive firsthand experience, she relied on research to support her opinions about victim behaviors and dynamics involving sexual assault. N.T. Trial, 11/9/16, at 281. The certified record undercuts Appellant's bald allegations to the contrary and demonstrates that Dr. Valliere's expert testimony was not based on novel scientific evidence.

As a result, the trial court did not have "articulable grounds" to believe that Dr. Valliere had not applied an accepted scientific methodology in a conventional fashion in reaching her conclusions. *Jacoby*, 170 A.3d at 1091.

Thus, a **Frye** hearing was unwarranted. The trial court properly rejected Appellant's request for a **Frye** hearing.[5]

### **Expert's Testimony and Bolstering Credibility**

Appellant further contends that the court erred in denying his Pre-Trial Motion to exclude Dr. Valliere's Section 5920 testimony because such testimony "bolstered" the Victim's credibility. Appellant's Brief at 41. He asserts that "under the guise of educating the jurors on the varying reactions to sexual violence," the expert's testimony "impermissibly invaded the province of the jury in offering an opinion about the [Victim's] credibility." **Id.** at 41, 46.

In 2012, the General Assembly enacted 42 Pa.C.S. § 5920 as a statutory rule of evidence permitting qualified experts to testify in certain criminal proceedings about "the dynamics of sexual violence, victim responses to sexual violence[,] and the impact of sexual violence on victims during and after being assaulted." 42 Pa.C.S. § 5920(b)(1).

_____

[5] In its Pa.R.A.P. 1925(a) Opinion, the trial court opined that the "Commonwealth showed that Pennsylvania was among the last states to permit this type of testimony and Dr. Valliere is not the only expert of this kind. Additionally, this sort of testimony has previously been admitted in Pennsylvania and upheld by the Superior Court." Trial Court Opinion at 8. Although the trial court did not explicitly conclude that Dr. Valliere's conclusions were "not novel," these statements reasonably lead to that conclusion. Moreover, "[w]e are not limited by the trial court's rationale and may affirm its decision on any basis." **Commonwealth v. Hunter**, 60 A.3d 156, 162 n.18 (Pa. Super. 2013).

- 21 -

Section 5920 permits expert testimony limited to "opinions regarding specific types of victim responses and victim behaviors." 42 Pa.C.S. § 5920(b)(2). Section 5920(b)(3) specifically precludes an expert witness from opining on "the credibility of any other witness, including the victim[.]" 42 Pa.C.S. § 5920(b)(3).

We have carefully reviewed Dr. Valliere's trial testimony and conclude that it did not run afoul of Section 5920. Dr. Valliere did not offer an opinion as to the credibility of the Victim or whether the Victim's response to this particular assault was normal. Rather, she testified generally about the manner in which victims of sexual abuse respond to an assault.

The Commonwealth did not provide Dr. Valliere with a factual account of the allegations against Appellant, and she testified without knowing anything about the allegations, the Victim, or Appellant in order to comply with Section 5920. Moreover, the Commonwealth's questions in this case were general and generic enough that Dr. Valliere's testimony did not bolster the Victim's testimony as Appellant claims.[6]

Since Dr. Valliere's testimony complied with Section 5920 by responding to the Commonwealth's general questions, she did not know the facts of the

---

[6] In fact, it was Appellant's counsel who asked Dr. Valliere specific hypotheticals based on Appellant's narrative of the case in an attempt to use Dr. Valliere to discredit the Victim's testimony that she did not consent to the sexual activity. *See*, *e.g.*, N.T. Trial, 11/9/16, at 313-14 (Appellant's counsel invoked the Victim by name in hypotheticals posed to Dr. Valliere during cross-examination).

case before she testified, and she did not offer an opinion about the credibility of the Victim or whether the Victim responded "normally," the trial court did not err in permitting Dr. Valliere to testify pursuant to Section 5920.

## Jury Instructions

Appellant argues that the trial court erred by not issuing an instruction to the jury that it should not consider Dr. Valliere's testimony as bolstering the credibility of the Victim. Appellant's Brief at 55. Appellant has waived this issue.

Pa.R.Crim.P. 647 provides: "No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate." Pa.R.Crim.P. 647(c). At the time of trial, Appellant did not object to the jury charge. On the contrary, Appellant agreed to a standard instruction on expert testimony. N.T. Trial, 11/10/16, at 205. Accordingly, Appellant failed to preserve this issue for appellate review and it is, thus, waived. *See* Pa.R.A.P. 302(a).

## *Brady* Violation

Appellant argues that the trial court erred in refusing to impose any penalty on the Commonwealth for its failure to comply with its discovery obligations. He contends that there was video security footage taken from the apartment complex where the alleged assault occurred that showed the Victim leaving the building exhibiting a playful upbeat demeanor. Appellant's Brief at 57. Appellant contends that the Commonwealth violated *Brady*

because it did not preserve in full or turn over this video surveillance which constituted exculpatory evidence. *Id.*

In *Brady v. Maryland*, 373 U.S. 83 (1963), the U.S. Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87.

This Court in *Commonwealth v. Dent*, 837 A.2d 571 (Pa. Super. 2003), found that the Commonwealth "cannot be held responsible for failing to provide the surveillance videotape when the tape was not ever in its possession, the tape having been overridden shortly after the incident." *Id.* at 584.

Here, the Commonwealth never had a videotape showing the Victim leaving the building in its possession. *See* N.T. Motion, 10/13/15, at 4; N.T. Trial, 11/8/16, at 324. Detective Albright and the building's manager, Barry Campbell, had reviewed the building's video recording system for the "time frame of a possible sexual assault[.]" *Id.* at 430a. Campbell testified that the system tapes over itself after a period of time and thus there is no video showing the Victim leaving the building. *Id.* at 444a, 454a.

Because the video did not exist, the Commonwealth could not have possessed it and cannot be held responsible for failing to provide a surveillance

tape that was never in its possession. **See Dent**, 837 A.2d at 584. Therefore, it did not commit a **Brady** violation. This issue has no merit.

### Juror Contact Information

Appellant argues that the trial court erred in refusing to turn over juror contact information to enable the defense to ensure the jurors were not coerced into reaching a verdict. Appellant's Brief at 63. Appellant avers that he sent correspondence to the trial court on March 10, 2017, requesting the information. **Id.** In fact, Appellant filed a Motion on March 27, 2017, requesting the juror contact information.

Appellant filed this appeal on March 10, 2017. Pursuant to Pennsylvania Rule of Appellate Procedure 1701(a), "after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter." Pa.R.A.P. 1701(a).

Because Appellant filed his Motion after he had filed his Notice of Appeal, the trial court no longer had jurisdiction to consider the Motion. Accordingly, Appellant's claim of trial court error is without merit.

### Discretionary Aspect of Sentence

Seventh, Appellant argues the trial court abused its discretion in sentencing him to three to six years' incarceration where witnesses "attested to his good character, to the fact that he is well-loved by both his young hockey players and their parents, that he has procured and continued with cognitive behavior therapy, that he has attended AA and maintained sobriety,

and where the entirety of the Commonwealth's case rested on the [the Victim's] assertion of [his] guilt." Appellant's Brief at 66.

A challenge to the discretionary aspects of sentencing is not automatically reviewable as of right. *Commonwealth v. Phillips*, 946 A.2d 103, 112 (Pa. Super. 2008). Prior to reviewing such a claim on its merits:

> We conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal; (2) **whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence**; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Id.*

Instantly, Appellant timely filed his appeal. However, he did not preserve the issue of an excessive sentence in his Post-Trial Motion or at sentencing.[7] It is well-established that "where the issues raised assail the trial court's exercise of discretion in fashioning the defendant's sentence, the trial court must be given the opportunity to reconsider the imposition of the sentence either through the defendant raising the issue at sentencing or in a post-sentence motion." *Commonwealth v. Tejada*, 107 A.3d 788, 798 (Pa. Super. 2015).

---

[7] We note that Appellant also did not comply with Pa.R.A.P. 2119(f). However, his failure to file a Rule 2119(f) Statement alone would not result in waiver in the instant case because the Commonwealth did not complain. *See Commonwealth v. Brougher*, 978 A.2d 373, 375 (Pa. Super. 2009).

Furthermore, "[t]he failure to do so results in waiver of those claims."

***Id. See also Commonwealth v. Cartrette***, 83 A.3d 1030, 1042-43 (Pa. Super. 2013) (*en banc*) (finding that, although the appellant raised a substantial question regarding the discretionary aspects of his sentence, he waived the issue by failing to preserve it in a post-sentence motion or at sentencing).

Based on the foregoing, we affirm Appellant's Judgment of Sentence.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/06/2018