J-A17002-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ZACHARY WILLIAM BAUM | : | |
| | : | |
| Appellant | : | No. 886 WDA 2024 |

Appeal from the Judgment of Sentence Entered January 25, 2024
In the Court of Common Pleas of Armstrong County Criminal Division at
No(s): CP-03-CR-0000760-2022

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ZACHARY WILLIAM BAUM | : | |
| | : | |
| Appellant | : | No. 888 WDA 2024 |

Appeal from the Judgment of Sentence Entered January 25, 2024
In the Court of Common Pleas of Armstrong County Criminal Division at
No(s): CP-03-CR-0000751-2022

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ZACHARY WILLIAM BAUM | : | |
| | : | |
| Appellant | : | No. 889 WDA 2024 |

Appeal from the Judgment of Sentence Entered January 25, 2024
In the Court of Common Pleas of Armstrong County Criminal Division at
No(s): CP-03-CR-0000762-2022

BEFORE:  McLAUGHLIN, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED:  October 15, 2025**

Zachary William Baum appeals from the judgments of sentence entered at three dockets for his convictions for multiple crimes against three victims: strangulation, stalking, and simple assault, related to victim C.F.; indecent assault, related to victim K.S.; and involuntary deviate sexual intercourse (IDSI), sexual abuse of children, and corruption of minors, related to victim R.T.[1] He challenges the sufficiency of the evidence, the admission of expert testimony, and the use of Pennsylvania Suggested Standard Criminal Jury Instruction (Pa. SSJI (Crim)) § 4.13B. We affirm.

Baum's appellate claims address his convictions related to victim R.T. only. Therefore, we limit our discussion to the procedural and factual history relevant to those convictions. The Commonwealth charged Baum with numerous sex offenses related to R.T., including IDSI. As to IDSI, the information alleged that Baum "forced his penis into the known juvenile victim's mouth against her will[.]" Criminal Information at CP-03-CR-0000762-2022.

Before trial, Baum filed a motion for a *Frye* hearing, seeking to disqualify the Commonwealth's expert psychologist, Veronique Valliere, Ph.D. He claimed that "[t]here are articulable grounds to believe that [Dr. Valliere] has not applied accepted scientific methodology in a conventional fashion" in reaching her conclusions. Motion for *Frye* Hearing, filed 8/28/23, at ¶ 7

---

[1] 18 Pa.C.S.A. §§ 2718(a)(1), 2709.1(a)(1), 2701(a)(1), 3126(a)(2), 3123(a)(1), 6312(b)(1), and 6301(a)(1)(iii), respectively.

(citation and quotation marks omitted). Baum then filed a second motion to disqualify Dr. Valliere, this time "based on the face of her expert report[.]" Motion to Disqualify Commonwealth Expert, filed 8/29/23, at ¶ 10. He argued that her report "demonstrates that to reach her expert opinion she applied no methodology, let alone a 'methodology generally accepted by scientists in the relevant field[.]'" *Id.* at ¶ 4 (citing *Grady v. Frito-Lay, Inc.*, 839 A.2d 1038 (Pa. 2002)). Baum stated at the top of the first page of both motions, "No Hearing Requested." The court denied both motions. Order, filed 9/7/23.

Baum also filed a motion *in limine* to preclude the use of the standard criminal jury instruction 4.13B, which reads:

> 4.13B Conviction Based on Reported Victim's Uncorroborated Testimony in Sexual Offenses--General
>
> The testimony of *[name of reported victim]* standing alone, if believed by you, is sufficient proof upon which to find the defendant guilty in this case, if the Commonwealth has established all of the elements of the crime beyond a reasonable doubt. The testimony of the reported victim need not be supported by other evidence to sustain a conviction. Thus, after consideration of the evidence, you may find the defendant guilty if the testimony of *[name of reported victim]* convinces you beyond a reasonable doubt that the defendant is guilty.

Pa. SSJI (Crim), § 4.13B. Baum argued that the instruction violated his Fifth and Sixth Amendment rights under the United States Constitution and his rights under the Pennsylvania Constitution. *See* Motion *In Limine* Regarding Pa. SSJI (Crim), § 4.13B, filed 8/28/23. The court also denied this motion. *See* Order, filed 9/7/23.

- 3 -

During the *voir dire* of Dr. Valliere, she described her educational background, training, and experience regarding sexual assault and victimization. N.T., Trial, 9/25/23, at 5-6. She also explained that her work with the Sexual Offender Assessment Board (SOAB) resulted in her "work[ing] with literally thousands of offenders and hundreds and hundreds – probably in the thousands of victims of now, either performing the care, doing evaluations or supervising the care of victims and offenders." *Id.* at 7. In addition to her experience on the SOAB, Dr. Valliere testified that she had two outpatient clinics where she treated both victims and offenders of sexual offenses. *Id.* Dr. Valliere testified that she had published three books about "victims, perpetrators and the criminal justice system" and had previously testified "dozens of times" on victim behavior and response related to sexual offenses. *Id.* at 8, 9.

Defense counsel pointed out that Dr. Valliere's expert report stated that she gained her knowledge in victim behavior and response "through [her] own studies as well as [through] clinical work treating hundreds of victims of assault." *Id.* at 11 (citing Defense Exhibit A ("Expert Report")). Dr. Valliere explained that these studies included "[a]ll the studying I have done to learn about victims, all of the research I did to write my books, all of the books that I have read." *Id.* She further testified that her knowledge about victim response and behavior is "based partly on what people tell me, what my experience shows and what the research shows." *Id.* at 33. Counsel also

inquired about the books written by Dr. Valliere and the methodology of doctors cited in the books. *Id.* at 16, 19, 20.

Following *voir dire*, counsel objected to Dr. Valliere being offered as an expert because "there is no methodology." *Id.* at 34. The court overruled the objection, finding that Dr. Valliere met the standard for testifying as an expert based on her "special training or experience beyond that that a lay person would have." *Id.* at 36. The court then explained to the jury that it was permitting Dr. Valliere to testify as an expert in clinical and forensic psychology. *Id.* at 37.

In her testimony, Dr. Valliere explained that she was testifying as a "blind expert," meaning that she had no knowledge of the facts of the case, the victim, or the perpetrator. *Id.* She further explained that her testimony was limited to "information based upon [her] training, experience and knowledge primarily about victim behaviors before, during and after a sexual assault[.]" *Id.* at 38. During cross-examination, counsel questioned Dr. Valliere about the books she authored and inquired as to her potential bias. Dr. Valliere did not testify about the specifics of the case, the victims, or Baum.

R.T. testified that she had come to know Baum when she was 16 years old. N.T., Trial, 9/26/23, at 118. The two met on Snapchat. *Id.* at 119. During their first meeting in December 2019, R.T. performed oral sex on Baum, who was 21 years old at the time. *Id.* at 121. R.T. testified that their sexual relationship eventually progressed to what she described as consensual vaginal intercourse and occurred multiple times throughout their relationship.

*Id.* at 124, 176, 177. She also described separate incidents in which Baum became violent with her. During one incident, Baum choked R.T. while she was lying on the bed after he learned that another male had seen a video of Baum and R.T. having sex. *Id.* at 143, 144. Another time, Baum pressed R.T.'s head against a window while grabbing her neck after discovering a "hickey" on her neck. *Id.* at 126.

R.T. also testified that she took medication for anxiety and depression and at times she would take too much. *Id.* at 129, 130. During those times she would feel "kind of foggy" and had difficulty remembering things in the moment. *Id.* at 130. She described one sexual encounter in Baum's car on a day that she had taken a larger amount of her medication. She testified that during the "middle" of sex with Baum "my head was feeling foggy and I was like 'How did I get here? I don't remember [Baum] taking me up here. I want to stop.'" *Id.* at 131. She told Baum to stop and "[Baum] just kept going even though I was saying no" and told her, "Don't tell your friends I raped you." *Id.* This occurred while R.T. was still 16 years of age. *Id.* at 133. During another sexual encounter, Baum ejaculated inside of R.T. without telling her. *Id.* at 150. A few weeks later, R.T. learned that she was pregnant. R.T. informed Baum of the pregnancy and "he said he would kill himself on his way to work if [R.T.] didn't have an abortion." *Id.* at 151. Baum and R.T. did not have sex after R.T. became pregnant. *Id.* at 152, 153.

R.T. gave birth to the child in April 2021. *Id.* at 152. A final sexual encounter occurred between Baum and R.T. in July 2021. *Id.* at 163. R.T.

drove with her child to pick Baum up to see the child. The three went to a park and afterwards R.T. drove Baum to his sister's house. *Id.* at 165. Baum told her to drive to the end of the street near a stop sign. *Id.* at 166. Once she arrived, Baum said he would not get out of the car unless R.T. performed oral sex on him. *Id.* The child was still in the car at the time. *Id.* Baum exposed his erect penis and R.T. put her face over it. *Id.* at 166, 201. Baum then pushed R.T.'s head down causing his penis to enter her mouth. *Id.* at 166, 167. She testified that she "was hoping on all I had to do was touch it and he would leave, but he pushed my mouth down more than I had wanted it." *Id.* at 201. R.T. got up and told Baum to get out of the car. *Id.* at 167. R.T.'s communication with Baum "mostly stopped" after this incident. *Id.* at 168.

The jury found Baum guilty of the above referenced offenses, and the court sentenced him to an aggregate term of nine to 25 years' incarceration. This timely appeal followed.

Baum raises the following issues:

> 1. Was the evidence insufficient to support a conviction of 18 Pa.C.S. § 312[3](a)(1) involuntary deviate sexual intercourse?
>
> 2. Does expert testimony that is not based on a methodology accepted in the field violate a defendant's rights under U.S. Const. amend. VI and Pa. Const. art. I §9?
>
> 3. Should Pa. SSJI (Crim) 4.13B, regarding the uncorroborated testimony of a victim in sexual offense cases, be disallowed as a violation of a defendant's right to due process under U.S. Const. amend. V and Pa. Const. art. I?

Baum's Br. at 4 (answers of trial court omitted).

Baum's first issue challenges the sufficiency of the evidence for his IDSI conviction. He claims that the Commonwealth failed to prove the element of forcible compulsion or threat of forcible compulsion. He points to R.T.'s testimony where she agreed that Baum did not threaten to harm her but said he would not get out of the car until she performed the sexual act. He claims the victim initially consented, noting her testimony that she "was hoping on all I had to do was touch it and he would leave, but he pushed my mouth down more than I had wanted to." *Id.* at 16. Baum claims that the Commonwealth failed to prove that Baum knew the limitation on consent or the subsequent withdrawal of consent by the victim. He also alleges the Commonwealth failed to prove that his act of pushing the victim's head down amounted to forcible compulsion or the threat of forcible compulsion. Additionally, he asserts that the Commonwealth failed to prove that his act of refusing to get out of the car amounted to forcible compulsion or the threat of such.

Our standard of review for a sufficiency claim is *de novo* and our scope of review is plenary. ***Commonwealth v. Banniger***, 303 A.3d 1085, 1091 (Pa.Super. 2023). We view the evidence in the light most favorable to the Commonwealth and determine whether "there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt." *Id.* (citation omitted).

The crime of IDSI occurs when a person "engages in deviate sexual intercourse[,]" including oral intercourse, "with a complainant by forcible compulsion." 18 Pa.C.S.A. § 3123(a)(1); **Commonwealth v. Kelley**, 801 A.2d 551, 556 (Pa. 2002) (listing oral intercourse as a form of deviate sexual intercourse). To establish forcible compulsion, the Commonwealth must prove beyond a reasonable doubt that the force was "absen[t] of consent, inducing submission without further resistance." **Commonwealth v. Buffington**, 828 A.2d 1024, 1031 (Pa. 2003). Such force may be physical, psychological, or the threat of physical force. **See Commonwealth v. Quinones**, 200 A.3d 1004, 1012 (Pa.Super. 2018) (citing **Commonwealth v. Brown**, 727 A.2d 541, 544 (Pa. 1999)). Forcible compulsion is determined based on the totality of circumstances and may include consideration of the following factors:

> the respective ages of the victim and the accused, the respective mental and physical conditions of the victim and the accused, the atmosphere and physical setting in which the incident was alleged to have taken place, the extent to which the accused may have been in a position of authority, domination or custodial control over the victim, and whether the victim was under duress.

**Commonwealth v. Gonzalez**, 109 A.3d 711, 721 (Pa.Super. 2015) (quoting **Commonwealth v. Rhodes**, 510 A.2d 1217, 1226 (Pa. 1986)).

Here, the court rejected Baum's sufficiency challenge. Viewing the evidence in the light most favorable to the Commonwealth, the court found that the Commonwealth established every element of the crime beyond a reasonable doubt. It explained:

In this case, R.T. testified that when she gave Mr. Baum a ride, Baum told her he would not get out of her car unless she performed oral sex on him. She did not wish to perform oral sex, but hoped that if she touched his penis he would leave the car. As she lowered her head toward his penis, he used his hand or hands to push her head down and her mouth onto his penis. She angrily pulled her head up and demanded that he get out of her car, which he did.

Viewing this evidence in the light most favorable to the Commonwealth, there is sufficient evidence to prove each and every element of the offense. In particular, the evidence that Mr. Baum surprised R.T. by pushing her head down so that his penis entered her mouth, together with the evidence that she angrily pulled her head back up and demanded that he exit the car, shows that she did not agree to perform oral sex and that his penis only entered her mouth because he pushed her head.

Rule 1925(a) Opinion, Docket 762, filed 8/30/24, at 12-13. We agree with the court's holding.

Based on the totality of the evidence, including the prior encounters between Baum and R.T., we conclude that the Commonwealth established the element of forcible compulsion or threat of forcible compulsion. First, the Commonwealth presented evidence of Baum's past physical violence against R.T. Then, against that background, the victim testified that on the occasion in question, Baum told her that he would not leave her car until she performed oral sex. R.T. testified that she "was hoping on all I had to do was touch it and he would leave," but Baum pushed her head down onto his penis farther than she wanted. N.T., Trial, 9/26/23, at 201. The fact that Baum had to push her head supports the inference that he was aware that he was acting without the victim's consent. Baum's claim is meritless.

Next, Baum challenges the admissibility of Dr. Valliere's expert testimony. He argues that Dr. Valliere failed to employ a methodology generally accepted in the field, and such testimony violated his rights under the Sixth Amendment and Pennsylvania Constitution. He claims her testimony revealed that she "employed no methodology and that Dr. Valliere had, in fact, in her book, rejected another purported expert's conclusions because he had employed no methodology[.]" Baum's Br. at 19. He also asserts that this case is distinguishable from **Commonwealth v. Cramer**, 195 A.3d 594 (Pa.Super. 2018), where this Court rejected a challenge to the admission of Dr. Valliere's expert testimony. **See id.** at 19-21 (citing N.T., Trial, 9/25/23, at 20-22).

The admission of expert testimony is within the trial court's discretion. **Cramer**, 195 A.3d at 605. Rule 702 of the Pennsylvania Rules of Evidence provides the factors for determining if a witness may give expert testimony.

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;
>
> (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
>
> (c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702.

- 11 -

Here, Baum does not argue that Dr. Valliere employed a methodology that is not generally accepted in the field, in violation of Rule 702. Rather, he argues that her testimony was inadmissible because she employed "no methodology" at all. Baum's Br. at 19. The record belies this claim. She explained how her training, education, experience, and research formed her substantive testimony on victims' behavior and responses related to sexual assault. Moreover, Baum's reliance on the *Frye*[2] standard is misplaced. It only applies if the party challenging the admissibility of expert scientific testimony first shows that the testimony involves novel scientific evidence. *See Cramer*, 195 A.3d at 606; *Trach v. Fellin*, 817 A.2d 1102, 1109 (Pa.Super. 2003) (*en banc*). Baum has made no effort to carry that initial burden. To the extent Baum has claimed a violation of the Sixth Amendment or the Pennsylvania Constitution, he waived the issue because his brief includes absolutely no argument on either question. Baum has not shown that the trial court abused its discretion in admitting Dr. Valliere's testimony.

In his final issue, Baum challenges suggested standard criminal jury instruction 4.13B regarding the jury's ability to rely on uncorroborated witness testimony in sexual offense cases. Baum directs us to out-of-state cases disapproving of a "uncorroborated testimony" or "single witness" jury instruction. He maintains that "[t]his Court should mandate a . . . 'non

---

[2] *See Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).

particularized instruction applicable to all witness testimony,' if not disallow [jury instruction] 4.13B altogether." Baum's Br. at 31.

This claim is meritless. Suggested standard criminal jury instruction 4.13B remains a proper statement of Pennsylvania law. ***See*** 18 Pa.C.S.A. § 3106 ("The testimony of a complainant need not be corroborated in prosecutions under this chapter."). ***See also Commonwealth v. Holiday***, No. 870 WDA 2022, 2023 WL 8923110 at *5 (Pa.Super. filed Dec. 27, 2023) (unpublished mem.) (rejecting constitutional challenge to suggested standard criminal jury instruction 4.13B). Baum has not cited any Pennsylvania authority stating otherwise.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/15/2025