J-S05004-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
ERIC MICHAEL COLLIER :
:
Appellant : No. 838 MDA 2019

Appeal from the Judgment of Sentence Entered August 6, 2018
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0005598-2016

BEFORE: SHOGAN, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.: **FILED JUNE 10, 2020**

Appellant, Eric Michael Collier, appeals from the judgment of sentence

entered on August 6, 2018, after a jury convicted him of one count each of

robbery and conspiracy to commit robbery.[1] We affirm.

The trial court summarized the initial procedural history as follows:

> On July 11, 2016, Agent Christopher Juba of the Office of
> Attorney General filed a criminal complaint charging [Appellant]
> with one count of Robbery and one count of Criminal Conspiracy
> to Commit Robbery. The charges stemmed from an incident on
> May 6, 2015[,] in the 700 block of Girard Street, in the City of
> Harrisburg, Dauphin County. On September 22, 2016, conflict
> counsel Bryan DePowell was appointed for the Appellant. On
> October 10, 2016, a preliminary hearing was held before
> Magisterial District Judge George Zozos, who determined a *prima
> facie* case existed and bound the case over to the Court of
> Common Pleas.

---

[1] 18 Pa.C.S. §§ 3701(a)(1)(ii) and 903, respectively.

On April 24-25, 2018, a trial by jury was held before the undersigned, Judge Edward M. Marsico, Jr., and the jury returned verdicts of guilty on both charges of Robbery and Criminal Conspiracy. Sentencing was deferred for preparation of a presentence investigation report.[1]

> [1] Prior to sentencing, the undersigned became aware that he knew [Appellant's] father. Accordingly, this [c]ourt recused itself from sentencing Appellant.

On August 6, 2018, the Honorable Scott Arthur Evans sentenced the Appellant to pay a fine of $500, and to be incarcerated in a State Correctional Institution for not less than seven (7), nor more than fifteen (15) years. Appellant received credit for 2 years, 22 days served by that time. On August 15, 2018, Attorney DePowell filed a post sentence motion alleging only that the verdict was against the weight of the evidence. On September 14, 2018, Attorney DePowell's appointment was vacated and present counsel, David Hoover, was appointed. On January 15, 2019, Judge Evans entered an order denying the post-sentence motion. However, pursuant to Pa.R.Crim.P. 720 (B)(3) (B and C), on December 14, 2018, the Clerk of Courts should have entered an order denying the motion by operation of law since 120 days had passed. Apparently, the January 2018 order denying the post sentence motion was never sent to Attorney Hoover. When he learned of the error, Attorney Hoover filed a Notice of Appeal to the Superior Court of Pennsylvania on May 21, 2019.

On June 13, 2019, Judge Evans ordered Appellant to comply with Pa.R.A.P. 1925 (b) within 21 days. On August 8, 2019, Judge Evans found the issue on appeal was waived due to the failure to file a concise statement of matters to be raised on appeal. On March 13, 2020, the Superior Court of Pennsylvania issued a Memorandum Opinion finding counsel was ineffective for failing to file a 1925 statement.[2] The Superior Court remanded the case to Dauphin County for Appellant's counsel to file a 1925 statement *nunc pro tunc*, which was filed on March 24, 2020. On April 1, 2020, Judge Evans issued an order transferring the case to the undersigned for preparation of a Pa.R.A.P. 1925 opinion. In his

---

[2] ***Commonwealth v. Collier***, 838 MDA 2019 (Pa. Super., filed March 13, 2020) (Non-Precedential Decision).

order, Judge Evans noted that Appellant raised "the single issue of the jury's verdict being against the weight of the evidence, which may only be addressed by Judge Marsico, who presided over [Appellant's] trial."

Trial Court Opinion, 4/24/20, at unnumbered 1–3.

Appellant raises the following issue on appeal:

A. DID THE TRIAL COURT ABUSE ITS DISCRECTION WHEN IT DECIDED THAT THE VERDICT OF THE JURY WAS NOT AGAINST THE GREATER WEIGHT OF THE EVIDENCE?

Appellant's Brief at 6 (*verbatim*).

Appellant's sole challenge is to the weight of the evidence, as it is the only issue raised in his post-sentence motion and Rule 1925(b) statement. We have held that a motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence "concedes that there is sufficient evidence to sustain the verdict." ***Commonwealth v. Rayner***, 153 A.3d 1049, 1054 (Pa. Super. 2016) (quoting ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000)). Our Supreme Court has described the standard applied to a weight-of-the-evidence claim as follows:

> The decision to grant or deny a motion for a new trial based upon a claim that the verdict is against the weight of the evidence is within the sound discretion of the trial court. Thus, "the function of an appellate court on appeal is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence." An appellate court may not overturn the trial court's decision unless the trial court "palpably abused its discretion in ruling on the weight claim." Further, in reviewing a challenge to the weight of the evidence, a verdict will be overturned only if it is "so contrary to the evidence as to shock one's sense of justice."

*Commonwealth v. Williams*, 176 A.3d 298, 312 (Pa. Super. 2017) (quoting *Commonwealth v. Cash*, 137 A.3d 1262, 1270 (Pa. 2016) (internal citations omitted)). A trial court's determination that a verdict was not against the interest of justice is "[o]ne of the least assailable reasons" for denying a new trial. *Commonwealth v. McGhee*, ___ A.3d ___, ___, 2020 PA Super 80, *7 (quoting *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013)). A verdict is against the weight of the evidence where "certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Commonwealth v. Lyons*, 833 A.2d 245, 258 (Pa. Super. 2003) (quoting *Widmer*, 744 A.2d at 751–752). "[W]e do not reach the underlying question of whether the verdict was, in fact, against the weight of the evidence . . . . Instead, this Court determines whether the trial court abused its discretion in reaching whatever decision it made on the motion." *Williams*, 176 A.3d at 312.

A review of Appellant's brief makes clear that he also incorporates argument challenging the sufficiency of the evidence, despite confining the statement of his issue to the weight of the evidence. Appellant's Brief at 14–22. However, any claims relating to the sufficiency of the evidence are waived because Appellant failed to include such issue in his court-ordered Pa.R.A.P. 1925(b) statement, filed *nunc pro tunc*. *Commonwealth v. Jones*, 191 A.3d 830, 834 (Pa. Super. 2018) (citing Pa.R.A.P. 1925(b)(4)(vii) ("Issues not

included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.")).

Regarding Appellant's weight-of-the-evidence claim, the trial court has written a cogent, thorough, and reflective Pa.R.A.P. 1925(a) opinion addressing the weight of the evidence, with support from the certified record and applicable case law. For this reason, we affirm the judgment of sentence on the basis of the trial court's April 24, 2020 opinion.[3]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/10/2020

---

[3] We direct the parties to attach a copy of the trial court's opinion in the event of future proceedings.



| | | |
|---|---|---|
| **COMMONWEALTH of PENNSYLVANIA** | : | **IN THE COURT OF COMMON PLEAS** |
| | : | **DAUPHIN COUNTY, PENNSYLVANIA** |
| | : | |
| | : | |
| v. | : | **DOCKET NO.   838 MDA 2019** |
| | : | |
| | : | **NO.     CP-22-CR- 0005598- 2016** |
| | : | |
| **ERIC MICHAEL COLLIER** | : | |

## OPINION
### [Pursuant to Pa.R.A.P. 1925(a)]

Presently before the Superior Court of Pennsylvania is the appeal of Eric Michael Collier (hereinafter "Appellant") from the August 6, 2018 sentence imposed for his convictions of Robbery and Criminal Conspiracy to Commit Robbery.

## PROCEDURAL HISTORY

On July 11, 2016, Agent Christopher Juba of the Office of Attorney General filed a criminal complaint charging Eric Michael Collier, hereinafter Appellant, with one count of Robbery and one count of Criminal Conspiracy to Commit Robbery.   The charges stemmed from an incident on May 6, 2015 in the 700 block of Girard Street, in the City of Harrisburg, Dauphin County.   On September 22, 2016, conflict counsel Bryan DePowell was appointed for the Appellant.   On October 10, 2016, a preliminary hearing was held before Magisterial District Judge George Zozos, who determined a *prima facie* case existed and bound the case over to the Court of Common Pleas.

On April 24-25, 2018, a trial by jury was held before the undersigned, Judge Edward M. Marsico, Jr., and the jury returned verdicts of guilty on both charges of

8-9

Robbery and Criminal Conspiracy. Sentencing was deferred for preparation of a presentence investigation report.[1]

On August 6, 2018, the Honorable Scott Arthur Evans sentenced the Appellant to pay a fine of $500, and to be incarcerated in a State Correctional Institution for not less than seven (7), nor more than fifteen (15) years. Appellant received credit for 2 years, 22 days served by that time. On August 15, 2018, Attorney DePowell filed a post sentence motion alleging only that the verdict was against the weight of the evidence. On September 14, 2018, Attorney DePowell's appointment was vacated and present counsel, David Hoover, was appointed. On January 15, 2019, Judge Evans entered an order denying the post-sentence motion. However, pursuant to Pa.R.Crim.P. 720(B)(3)(B and C), on December 14, 2018, the Clerk of Courts should have entered an order denying the motion by operation of law since 120 days had passed. Apparently, the January 2018 order denying the post sentence motion was never sent to Attorney Hoover. When he learned of the error, Attorney Hoover filed a Notice of Appeal to the Superior Court of Pennsylvania on May 21, 2019.

On June 13, 2019, Judge Evans ordered Appellant to comply with Pa.R.A.P. 1925 (b) within 21 days. On August 8, 2019, Judge Evans found the issue on appeal was waived due to the failure to file a concise statement of matters to be raised on appeal. On March 13, 2020, the Superior Court of Pennsylvania issued a Memorandum Opinion finding counsel was ineffective for failing to file a 1925 statement. The Superior Court remanded the case to Dauphin County for Appellant's counsel to file a 1925 statement

---

[1] Prior to sentencing, the undersigned became aware that he knew the Defendant's father. Accordingly, this Court recused itself from sentencing Appellant.

*nunc pro tunc*, which was filed on March 24, 2020. On April 1, 2020, Judge Evans issued an order transferring the case to the undersigned for preparation of a Pa.R.A.P. 1925 opinion. In his order, Judge Evans noted that Appellant raised "the single issue of the jury's verdict being against the weight of the evidence, which may only be addressed by Judge Marsico, who presided over Defendant's trial." As such, this opinion follows.

## DISCUSSION

A motion for new trial on grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict but contends, nevertheless, that the verdict is against the weight of the evidence. Whether a new trial should be granted on grounds that the verdict is against the weight of the evidence is addressed to the sound discretion of the trial judge, and his decision will not be reversed on appeal unless there has been an abuse of discretion. The test is not whether the court would have decided the same way but whether the verdict is so contrary to the evidence as to make the award of a new trial imperative so that right may be given another opportunity to prevail. Commonwealth v. Whiteman, 336 Pa. Super 120, 124-25, 485 A.2d 459, 461-62 (1984), *citing*, Commonwealth v. Taylor, 324 Pa. Super, 420, 425, 471 A.2d 1228, 1229-30 (1984); Commonwealth v. Sample, 321 Pa. Super.457, 468 A.2d 799 (1983) (allocatur denied); Commonwealth v. Miller, 303 Pa. Super. 504, 450 A.2d 40 (1982) and Commonwealth v. Vogel, 501 Pa. 314, 461 A.2d 604 (1983) cert. denied, ___U.S. ____, 104 S.Ct. 1603, 80 L.Ed. 2d 133 (1984).

When reviewing a challenge to the weight of the evidence, an appellate court reviews "the trial court's exercise of discretion." Commonwealth v. Johnson, 192 A.3d 1149, 1152-53 (Pa.Super.2018) (*citing* Commonwealth v. Hicks, 151 A.3d 216, 223

(Pa.Super.2016) ). A reversal of a verdict is not necessary "unless it is so contrary to the evidence as to shock one's sense of justice." Id. at 1153. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses." Commonwealth v. Cramer, 195 A.3d 594, 600 (Pa.Super.2018)(citation omitted). The fact-finder also has the responsibility of "resolving contradictory testimony and questions of credibility." Id. (citation omitted). We give great deference to the trial court's decision regarding a weight of the evidence claim because it "had the opportunity to hear and see the evidence presented." Id. (citation omitted). Commonwealth v. Roane, 204 A.3d 998, 1001 (Pa.Super.2019).

In March of 2015, Agent Christopher Juba of the Office of Attorney General began working with a then confidential informant, later revealed to be Jesus Maldonado. Agent Juba had executed a search warrant at Maldonado's residence, but instead of immediately charging him with possession with intent to deliver heroin, he utilized Maldonado as an informant. (N.T., pp. 251-252). Maldonado made two controlled buys of heroin from a Tyrone Hill in March and April, 2015 for $500 and $2,800. On May 6, 2015, Maldonado made a call to Hill requesting to buy black tar heroin for $2,800. (N.T., pp. 259-261). After Hill initially told Maldonado that he did not have any heroin to sell and it would probably be a week until he had heroin, Hill told Maldonado he could provide him heroin on a call two minutes before sunset at 8:04 p.m. (N.T., pp. 264-266). While the deal was originally set to take place at 20th and Brookwood Streets in Harrisburg (where the two prior transactions occurred), Hill told Maldonado to go to Girard Street. (N.T., pp. 160-161).

On Girard Street, Maldonado saw a car pull up behind the car he had parked, and Hill called him to tell him he was walking towards him. (N.T., p. 167, l. 19-21). Although it was dark, Maldonado saw people at his passenger side door. "They opened it, put a gun to my head, and told me to give them the money. So I hand them the money." (N.T., 168, l. 13-15). Maldonado identified the gun as a gray revolver, but could not identify the gunman. He indicated the gunman was not Tyrone Hill because it was not his voice. (N.T., pp. 169-170). Maldonado had been provided $2,800 by Agent Juba. (N.T., p. 269). Around 8:34 p.m., Agent Juba received a call from a hysterical Maldonado who informed Juba that he was just robbed at gunpoint. (N.T., pp. 267-68).

On the evening of the incident, Agent Ronald Golembeski of the Office of Attorney General, was in a fixed wing airplane conducting surveillance on the proposed drug purchase by Jesus Maldonado from Tyrone Hill. (N.T., pp. 186-88). The agent took high definition infrared video that night and showed said video to the jury in this case. Agent Golembeski pointed out in the video that individuals show white spots when their skin is exposed; however, if the skin is covered it shows up darker since no body heat is being emitted. (N.T., p. 193). The agent pointed out on the video an individual who had a covering on his head as he did not show a white spot other than his facial area. (N.T., p. 196). That same individual is seen getting in the rear driver's side of a car behind Maldonado's car. (N.T., p. 197). The agent could see his left arm swinging but could not see his right arm. (N.T., p. 196).

Agent James McBride of the Office of Attorney General was conducting surveillance on the ground the evening of May 6th. The agent saw Tyrone Hill in the company of his brother, Michael Hill, as well as Darren Bowers and Eric Collier, between

7 and 8 p.m. (N.T., pp. 207-208). Collier, the Appellant, was wearing a gray hoodie with the letters DGM in black letters on it with gray sweats. (N.T., p. 208, l. 5-7). The Appellant was the only one of the four wearing a sweatshirt. (N.T., p. 209). Agent McBride heard over the radio that the informant was robbed and immediately began following a BMW that had been behind the informant's vehicle. (N.T., pp. 212-217). At one point, three persons got out of the car, and Agent McBride observed the Appellant in the middle of the street. (N.T., pp. 217-218). Eventually, Agent McBride helped apprehend the driver of the BMW, Darren Bowers. (N.T., pp. 219-220). Shortly after his arrest, Bowers provided a statement to Agent Juba. (N.T., pp. 270-276).

Darren Bowers has known the Appellant since he was a kid. (N.T., p. 81). Bowers often "hung out" with Tyrone Hill, Mike Hill, and the Appellant. (N.T., p. 83). On May 6, the four of them entered Bowers' aunt's blue BMW 745. (N.T., p. 89). Tyrone Hill directed Bowers to Brookwood Street and, after they saw a police vehicle, to Girard Street. (N.T., pp. 90-92). The Appellant was in the driver's side rear seat, and Mike Hill was in the rear passenger seat. (N.T., p. 90). Bowers noted that the Appellant and Mike Hill left the car for about 5 minutes. (N.T., pp. 93-94). Ty Hill told the Appellant to "go serve him." (N.T., p. 94). The Appellant was wearing a hooded sweatshirt with the hood up. (N.T., p. 95). Bowers noticed that when the Appellant returned "his waist was heavy…like he had a gun." (N.T., p. 96). The Appellant said, "I got 'em." (N.T., p. 99). Bowers interpreted that as meaning the Appellant had the money. (Id.). Bowers saw Mike Hill with a wad of money, and Hill said "it was sweet." (N.T., p. 101). Hill also told Bowers "that was easy." (N.T., p. 102).

Here, the jury's guilty verdicts were certainly not against the weight of the evidence. The jury heard from several witnesses including an accomplice, Darren Bowers. Bowers provided credible testimony regarding the crimes. Bowers and other witnesses also steadfastly pointed out the role of the Appellant in those crimes. Mr. Bowers testified that the Appellant and Mike Hill left his car, went away for five minutes and that the Appellant came back like he had a gun in his possession. Further, Hill had a wad of cash and the Appellant said "I got 'em."

Agents testified that infrared video showed an individual with some type of head covering, like a hooded sweatshirt, get in and out of the Bowers' car, which was directly behind the car of Maldonado. The Appellant was with Tyrone Hill, who set up the meeting, when he left the car right behind Maldonado's and then Maldonado was robbed. He then returned to the BMW, apparently with a gun in his sweatshirt. An agent on the ground then saw him right after three men got out of the getaway car.

A person is guilty of robbery if, in the course of committing a theft, he threatens another with or intentionally puts him in fear of immediate serious bodily injury. 18 Pa.C.S. 3701 (a)(1)(ii). Here, the victim of the robbery clearly and credibly testified that a gun was placed to his head and $2,800 was taken from him. Mr. Bowers was believable when he testified that the Appellant left his car, went to the victim's car, and came back like he was carrying a gun. Additionally, the testimony of the agents, as well as the video shown at trial, showed that the Appellant was wearing a hooded sweatshirt and was at the scene of the crime. The verdict of guilty on the charge of robbery was in no way against the weight of the evidence.

In order to prove the existence of a criminal conspiracy, the Commonwealth must demonstrate that the defendant: "(1) entered an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and, (3) an overt act was done in furtherance of the conspiracy." Commonwealth v. Chambers, 647 Pa. 92, 107, 188 A.3d 400, 409–10 (2018) citing Commonwealth v. Rios, 546 Pa. 271, 684 A.2d 1025, 1030 (1996); see 18 Pa.C.S. § 903. In the instant case, the evidence clearly established, beyond a reasonable doubt, that the Appellant agreed with his co-conspirators that he would rob Jesus Maldonado. He shared the criminal intent and he and others committed many overt acts to further the conspiracy. The guilty verdict on criminal conspiracy, like the verdict on robbery, does not shock one's sense of justice and was not against the weight of the evidence.

Date: 4.23.20

Respectfully submitted:

_____
Edward M. Marsico, Jr., J.

**DISTRIBUTION**: 4/24/2020 @ 10:47am
David Hoover, Esq. – 4400 Linglestown Road, Suite 203, Harrisburg, PA 17112 mail
Ryan Lysaght, Esq.- Dauphin County District Attorney's Office 70
Clerk of Courts file
FILE
Superior Court mail