J-A01043-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ISAAC ZARUBIN | : | |
| | : | |
| Appellant | : | No. 2887 EDA 2018 |

Appeal from the Judgment of Sentence Entered May 3, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0010825-2016,
CP-51-CR-0011132-2016

BEFORE:   NICHOLS, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    Filed: August 20, 2020

Appellant, Isaac Zarubin, appeals from the judgment of sentence following his conviction of aggravated assault, simple assault, reckless endangerment of another person ("REAP"), possession of an instrument of crime ("PIC"), and resisting arrest.[1]  We affirm.

On November 5, 2016, Appellant was arrested following an hours-long series of assaults directed towards his domestic partner ("the victim") in the apartment they shared in West Philadelphia.  Appellant also struck Officer Roland Butler of the Philadelphia Police Department while Officer Butler

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2702(a)(1), (3), 2701(a), 2705, 907(a), and 5104, respectively.

attempted to effectuate an arrest of Appellant. Appellant was charged at docket number CP-51-CR-0010825-2016 ("No. 10825-16") with aggravated assault and simple assault of the victim, REAP, PIC, and contempt for violation of a protection from abuse order or agreement.[2] At docket number CP-51-CR-0011132-2016 ("No. 11132-16"), Appellant was charged with aggravated assault and simple assault of Officer Butler, REAP, and resisting arrest.

Appellant proceeded to a bifurcated non-jury trial on November 17, 2017 and December 18, 2017 before the Honorable Pamela Pryor Dembe. The evidence at trial consisted of the testimony of the victim, Officer Butler, Officer Jennifer Gainer, and a character witness for Appellant, as well as photos of the victim, Appellant, and Officer Butler, and Appellant's medical records.

The victim testified that he awoke on November 5, 2016 in a common area outside the apartment he shared with Appellant on the 4200 block of Chestnut Street in West Philadelphia, wearing nothing and with only a blanket and pillow. N.T., 11/17/17, at 8-10. Appellant ultimately let the victim back into the apartment, and the victim dozed off. *Id.* at 10-11. The next thing that the victim recalled was a red object striking him in the head, which he later learned was a frying pan. *Id.* at 9, 11.

Although the ensuing events were "all a blur," the victim described repeated attacks that occurred over the course of the day, including Appellant striking him in the head with a metal bar that bent from the impact, Appellant

_____

[2] 23 Pa.C.S. § 6114(a).

hitting him over the head with a framed picture causing the glass to shatter, and Appellant striking him in various parts of the body with a wooden decorative sword. *Id.* at 12, 17-19, 23, 41. Appellant also pulled the victim's chest binder – which was made of a heavy mesh material – up to the victim's neck, and then pulled down on it with both hands.[3] *Id.* at 14-15, 19-23. The victim described almost suffocating from the pressure of the chest binder on his neck, but he eventually managed to duck his head and free himself from the garment. *Id.* at 21-22. The victim further testified that Appellant bit his left hand several times and said that the victim would never again be able to play a musical instrument. *Id.* at 26.

Ultimately, the victim was able to escape the apartment when Appellant turned his back. *Id.* at 27. When he approached a woman at a bus stop on Chestnut Street, she asked him if "a bomb had gone off" and quickly dialed 911. *Id.* at 27-28. During a conversation with an EMT treating him at the scene, the victim recalled that the first assault had taken place at 7:30 a.m. and he was told that the time was then 4:30 p.m. *Id.* at 12, 34. The victim was taken to the hospital where he was treated for various injuries including a head wound that had caused significant bleeding and injuries to his left pinky finger that had almost been bitten off. *Id.* at 12-14. In the ensuing days, the victim noticed that he had sustained cuts and bruises all over his body, he developed a prominent two-inch scar on his upper left chest from the chest

_____

[3] Both Appellant and the victim are transgender men; a chest binder is a type of garment that transgender men wear on their chest. N.T., 11/17/17, at 15.

binder, and he continued to suffer from spasms in his left hand which had hindered his career as a musician. *Id.* at 14-16.

Officer Butler testified that he was the first officer responding to the scene, and after assessing the situation he informed Appellant that he would be placed under arrest. N.T., 12/18/17, at 7-10. However, because Appellant was wearing only boxer shorts, Officer Butler let him go back to his apartment to put on more clothing. *Id.* at 10. Once back at his apartment, Appellant became defiant and refused to comply with Officer Butler's verbal directives. *Id.* at 10-11. Officer Butler then called for back-up. *Id.* at 11. Officer Butler attempted to grab Appellant's arm several times, but Appellant repeatedly wriggled away. *Id.* On the third attempt, Officer Butler grabbed Appellant's arm and wrestled him to the ground; however during the scuffle Appellant struck Officer Butler two or three times in the face with his closed fist. *Id.* Officer Butler testified that he punched Appellant approximately three to four times during the struggle. *Id.* at 18.

Officer Butler was able to place Appellant on his stomach, but Appellant refused to put his hands behind his back to be handcuffed. *Id.* at 12. Officer Gainer's partner then attempted to tase Appellant, but one of the prongs missed. *Id.* After more struggle, the officers were eventually able to get access to Appellant's arms and handcuff him. *Id.* Officer Butler noticed Appellant to be bleeding from his mouth after he was arrested. *Id.* at 12-13. Officer Butler sustained a bruised thumb during the incident and had his thumb placed in a splint. *Id.* at 13-14.

Officer Gainer testified that she arrived with her partner to the apartment as back-up for Officer Butler while he was in the midst of a struggle with Appellant. N.T., 11/17/17, at 51. Officer Gainer stated that she saw Appellant first throw several punches towards Officer Butler's torso before Officer Butler struck him in the face in response. *Id.* at 51-52. Officer Gainer's partner deployed the taser and the three officers were ultimately able to complete the arrest of Appellant. *Id.* at 52-53. Once the arrest was completed, Officer Gainer approached the victim who was being treated by EMTs; Officer Gainer testified that the victim was shaken and scared and she noticed cuts to his hands, head, and face. *Id.* at 54-55.

Appellant presented the testimony of Adyn Glaum, who resided with Appellant and had known Appellant for approximately six months as of the date of trial. N.T., 12/18/17, at 21. Glaum testified that Appellant had a reputation in the community for being a law-abiding citizen and a peaceful person. *Id.* at 21-22.

At the conclusion of trial, the trial court found Appellant guilty of aggravated assault, simple assault, REAP, and PIC at No. 10825-16 and aggravated assault, simple assault, and resisting arrest at No. 11132-16.[4] Judge Dembe retired shortly after the trial, and the matter was reassigned to

_____

[4] Appellant was found not guilty of REAP at No. 11132-16, and the Commonwealth nolle prosed the contempt for violation of a protection from abuse order or agreement charge at No. 10825-16. N.T., 12/18/17, at 20, 39-40.

the Honorable Zachary C. Shaffer. On May 3, 2018, Judge Shaffer sentenced Appellant to an aggregate term of imprisonment of three to six years followed by a four year period of probation. Appellant filed a timely post-sentence motion, which was denied by operation of law on September 11, 2018. Appellant thereafter filed a timely appeal.[5]

Before we reach the merits of the appeal, we must address whether this appeal must be quashed pursuant to Rule of Appellate Procedure 341(a) and **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), because Appellant filed an identical notice of appeal at both No. 10825-16 and No. 11132-16, listing both docket numbers on the notice. On December 21, 2018, this Court issued a rule directing Appellant to show cause why his appeal should not be quashed in light of **Walker**. Appellant filed a response, and, on February 26, 2019, this Court entered an order discharging the rule, but stating that the issue would be referred to the panel considering the merits of his appeal.

Rule 341(a) provides in relevant part that "an appeal may be taken as of right from any final order of a government unit or trial court." Pa.R.A.P. 341(a). In 2013, the Official Note of Rule 341 was amended to provide the following clarification regarding compliance with Rule 341(a):

> Where . . . one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed. **Commonwealth v. C.M.K.**, 932

---

[5] Appellant filed his concise statement of errors complained of on appeal on November 5, 2018, and Judge Shaffer issued an opinion on November 29, 2018.

> A.2d 111, 113 & n.3 (Pa. Super. 2007) (quashing appeal taken by single notice of appeal from order on remand for consideration under Pa.R.Crim.P. 607 of two persons' judgments of sentence).

Pa.R.A.P. 341, Official Note.

In **Walker**, the Commonwealth filed a single notice of appeal from an order that granted four motions to suppress filed by four separate defendants at four docket numbers. 185 A.3d at 971-72. The Court noted that Pennsylvania appellate courts had historically declined to quash a single notice of appeal challenging multiple appealable orders, but concluded that the 2013 amendment to the Official Note of Rule 341 establishes "a bright-line mandatory instruction to practitioners to file separate notices of appeal." **Id.** at 974-77. Thus, the Court held that "when a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed." **Id.** at 977. The Court stated that the failure to comply with this rule requires the quashal of an appeal, but that this rule would only apply prospectively from the date that decision was issued. **Id.** at 977.

Appellant argues that he complied with the rule announced in **Walker** because he electronically filed two separate notices of appeal, one on each of the trial court dockets. Response to Rule to Show Cause, 12/28/18, ¶9. Appellant contends that the separate filings can be seen by the fact that the Clerk of Courts affixed an electronic time stamp on the top right-hand corner showing that the notices were filed two minutes apart. **Id.**, Exhibits A, B.

We agree with Appellant that **Walker** is not implicated in this case. In **Commonwealth v. Jerome Johnson**, ___ A.3d ___, 2020 PA Super 164

(filed July 9, 2020) (*en banc*), an *en banc* panel of this Court recently clarified that *Walker* does not require quashal of an appeal where the appellant filed a separate notice of appeal at each docket number resolved by the order from which the appeal is taken. *Id.* at \*11-12. In *Jerome Johnson*, the appellant filed four separate notices of appeal from an order resolving issues at four lower court dockets, with each of the notices listing all four docket numbers but with one docket number italicized on each of the separate notices to indicate to which case the notice pertained. *Id.* at \*3, \*10. This Court determined that the notices were in compliance with *Walker* and Rule 341 because "separate" notices were filed at each docket. *Id.* at \*11. Furthermore, this Court held that *Walker* does not require the quashal of an appeal simply by virtue of an appellant's inclusion of two or more docket numbers on a notice of appeal. *Id.* at \*12.

In the subsequent *en banc* decision of *Commonwealth v. Rebecca Johnson*, ___ A.3d ___, 2020 PA Super 173 (filed July 23, 2020) (*en banc*), this Court reinforced its holding that compliance with *Walker* does not necessitate individualized notices of appeal for each matter being appealed that list only one docket number. *Id.* at \*2-3. In *Rebecca Johnson*, the appellant filed one notice of appeal listing three docket numbers from an order resolving matters at three docket numbers; however, this Court was able to discern that the notice was filed separately at each of the three lower court dockets because the clerk of courts had affixed distinct time stamps on each notice. *Id.* at \*3. We therefore did not quash the appeal. *Id.* at \*4.

Here, our review of the record demonstrates that Appellant filed a separate notice of appeal on each docket, which can be seen from the time stamps on each of the notices showing that the notice in No. 10825-16 was filed at 9:20 a.m. on October 3, 2018 and the notice in No. 11132-16 was filed two minutes later at 9:22 a.m. Although the two notices each list both trial court docket numbers, this fact is irrelevant to our analysis under **Walker**. Therefore, in accordance with **Jerome Johnson** and **Rebecca Johnson**, the instant notices of appeal do not run afoul of Rule 341 and **Walker**, and we may proceed to the merits of this appeal.

Appellant presents the following issue on appeal: "Was not the verdict of guilt against the weight of the evidence to such a degree as to shock the conscience?" Appellant's Brief at 3. Appellant asserts that "the evidence against [him] is riddled with inconsistencies and impossibilities," and in particular that the victim's account was "nothing more than a vague and disordered list of supposed assaults," that fails to hold up even under the most cursory assessment. Appellant's Brief at 11-12. Appellant in particular points to the victim's inability to explain how he found himself outside the apartment on the morning of the incident, how the fight started, and how Appellant was able to restrain him throughout the course of the day despite the fact that Appellant was several inches shorter than the victim and weighed much less than the victim. Appellant also contends that the victim's assertion that he never struck Appellant was contradicted by his testimony at the preliminary hearing that he punched Appellant one or two times.

Appellant further challenges the evidence with respect to the assault of Officer Butler. Appellant asserts that Officer Butler's account that he did not strike Appellant until they were on the floor conflicted with the testimony of Officer Gainer that punches were exchanged while Officer Butler and Appellant were still standing. According to Appellant, Officer Butler's recounting of the incident is undermined by his minimizing of any injury to Appellant, despite the fact that medical records submitted at trial showed that he suffered multiple facial fractures, a broken jaw, two knocked out teeth, and required stiches over the right eye.

Appellant contrasts this testimony with evidence that he had a peaceful and law-abiding reputation in the community. In light of the "contradictory and evasive testimony from the Commonwealth's witnesses, testimony that was belied by [Appellant's] medical records, testimony that was contradicted by other Commonwealth witnesses (in the case of the officers) or the witness himself (in the case of [the victim])[,]" Appellant contends that his convictions were so contrary to the evidence to shock the conscience and require a new trial. *Id.* at 16.

Generally, our review of weight-of-the-evidence claims is "extremely limited" and solely "consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Rosser*, 135 A.3d 1077, 1090 (Pa. Super. 2016) (*en banc*) (citation omitted). However, in this case, the trial judge, Judge Dembe, retired prior to Appellant's sentencing and

therefore did not have the opportunity to address Appellant's weight-of-the-evidence arguments. While Judge Shaffer ruled on this issue in his Pa.R.A.P. 1925(a) opinion, in so doing he was not "aided by an on-the-scene evaluation of the evidence" and instead did so from a "vantage point[]" not dissimilar to that of an appellate court's review of a "cold record." ***Armbruster v. Horowitz***, 813 A.2d 698, 703 (Pa. 2002) (citation omitted).

In such cases, our Supreme Court has explained that an exception exists to our general standard of review such that "where a properly preserved weight of the evidence claim is raised on appeal and the judge who presided at trial failed to rule on the claim and is now permanently unavailable to do so, the claim must be reviewed by the appellate tribunal in the first instance." ***Id.*** at 705. Accordingly, our scope of review is plenary and "[o]ur role [] is to review the entire record and determine whether the successor judge correctly determined that the [trier of fact's] verdict was not against the weight of the evidence." ***Commonwealth v. Izurieta***, 171 A.3d 803, 809 (Pa. Super. 2017).

The role of a court in addressing a weight-of-the-evidence claim is "to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." ***Id.*** (citation omitted). "It has often been stated that a new trial should be awarded when the [] verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." ***Id.***

(citation omitted). "A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." *Id.* (citation omitted). "Resolving contradictory testimony and questions of credibility are matters for the factfinder" rather than the reviewing court. *Commonwealth v. Cramer*, 195 A.3d 594, 600 (Pa. Super. 2018) (citation omitted).

Reviewing the evidence in light of Appellant's weight of the evidence claim, Judge Shaffer determined that the arguments as to both the victim and Officer Butler were without merit. Trial Court Opinion, 11/29/18, at 7-8. With respect to the victim, Judge Shaffer observed that his testimony established an assault stretching over multiple hours in which he was struck on the head with multiple objects and strangled nearly to the point of suffocation. *Id.* at 7. In light of the severe trauma the victim endured, Judge Shaffer concluded that it was entirely plausible that the victim focused solely on his survival and was not able to escape the apartment sooner. *Id.* With respect to Officer Butler, Judge Shaffer determined that uncontroverted testimony from Officer Butler and Officer Gainer established that Appellant actively resisted Officer Butlers' attempt to arrest him and Appellant struck Officer Butler several times. *Id.* at 7-8.

Upon our review of the record, we agree with Judge Shaffer that Appellant's convictions are not against the weight of the evidence. The record establishes that Appellant struck and choked the victim with multiple objects over the course of several hours and that he struck Officer Butler several times

with his fists while resting arrest. N.T., 11/17/17, at 9, 11, 14-15, 17-23, 26, 41, 51-52; N.T., 12/18/17, at 10-12. Appellant attempts to undermine the veracity of the victim's account by questioning the victim's imprecise timeline of the assaults and why the victim did not fight back against Appellant or escape sooner. However, Appellant probed each of these issues during cross-examination of the victim and therefore these matters were before Judge Dembe as the trier of fact. Specifically, the victim explained on cross-examination that his memory of the November 5, 2016 incident was "a blur" because of the blows he received to his head, but that he could remember the events that happened that day even if he could not recall the exact sequence of events. N.T., 11/17/17, at 40. The victim also testified that he unsuccessfully attempted to escape the apartment on several occasions, but Appellant prevented him from getting through the door by "[p]ushing, shoving, kicking, hitting [the victim] with objects." *Id.* at 38. Furthermore, the victim stated that he could not overpower Appellant to get out of the apartment because he "was not that strong" and he "was trying to get out of the way and not get killed." *Id.* at 38.

We find none of the alleged vague and inconsistent testimony by the victim to be "so clearly of greater weight [than the evidence probative of guilt] that to ignore them or to give them equal weight with all the facts is to deny justice." *Izurieta*, 171 A.3d at 809 (citation omitted). Furthermore, to the extent Appellant asks us to reassess the victim's credibility, we cannot do so as resolving issues related to credibility and conflicting evidence were matters

- 13 -

solely entrusted to Judge Dembe as the trier of fact. *Cramer*, 195 A.3d at 600.

Appellant also challenges the victim's account based upon purported inconsistencies between the victim's trial testimony and his preliminary hearing testimony. Specifically, in response to a question at the preliminary hearing "[h]ow many times did you punch" Appellant, the victim responded "[o]nce, and maybe twice just when he was biting my hand." N.T., 12/18/17, at 26-27.[6] By contrast, at trial, when asked whether he "hit" or "struck" Appellant, the victim stated that he "shoved him away to get my finger out of his bite, and I shoved him away to get his bite out of the chunk of my hand [sic]." N.T., 11/17/17, at 34-35. The victim then explained that he was "a pacifist" and he did not "believe in hitting back." *Id.* at 35. To the extent any inconsistency exists in this testimony, it appears to be only a minor distinction between the meaning of a "punch" and a "shove." In any event, the alleged inconsistency was presented to Judge Dembe who did not find that it undermined the victim's credibility. We may not second guess that determination.

Appellant also challenges the weight of the evidence at No. 11132-16, arguing that the significant injuries Appellant sustained during his arrest undermine his convictions for resisting arrest and assault of Officer Butler.

_____

[6] While the transcript of the preliminary hearing is not contained in the certified record on appeal, this portion of the preliminary hearing transcript was read into the record at trial.

However, Officer Butler readily conceded that he punched Appellant three or four times in the face in response to Appellant's blows. N.T., 12/18/17, at 11-12, 18. The fact that Appellant sustained more serious injuries than Officer Butler does not negate the evidence of Appellant's assault of Officer Butler.[7]

Finally, Appellant argues that Officer Butler and Officer Gainer offered contrasting testimony regarding at what point Officer Butler and Appellant exchanged punches during their struggle. Officer Butler testified that he grabbed for Appellant's arm several times, they fell to the floor, and then they exchanged punches. N.T., 12/18/17, at 11-12. On the other hand, Officer Gainer first stated during her testimony that Officer Butler was wrestling for Appellant's arm while standing, they began exchanging punches, and then the two fell to the ground; however, later Officer Gainer indicated that Appellant and Officer Butler punched each other after they were on the ground. N.T., 11/17/17, at 51, 60-61. Once again, it is the responsibility of the trier of fact, rather than reviewing courts, to resolve conflicts of evidence. *Cramer*, 195 A.3d at 600. We do not find that the apparent discrepancy between the officers' testimony renders Appellant's convictions for resisting arrest and

_____

[7] We note that Appellant's aggravated assault conviction at No. 11132-16 fell under Section 2702(a)(3) of the Crimes Code, which applies to assaults of police officers in the performance of their duty and does not require that bodily injury be "serious." 18 Pa.C.S. § 2702(a)(3) ("A person is guilty of aggravated assault if he . . . attempts to cause or intentionally or knowingly causes bodily injury to any [police] officer[] in the performance of duty".).

assault of Officer Butler so contrary to the evidence to shock one's sense of justice.  Appellant's appeal thus merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/20/20