J-A17011-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WILLIAM BRUNSON | : | |
| | : | |
| Appellant | : | No. 541 EDA 2022 |

Appeal from the Judgment of Sentence Entered October 6, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008747-2017,
CP-51-CR-0008748-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WILLIAM BRUNSON | : | |
| | : | |
| Appellant | : | No. 542 EDA 2022 |

Appeal from the Judgment of Sentence Entered October 6, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008747-2017,
CP-51-CR-0008748-2017

BEFORE:  KING, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED AUGUST 22, 2023**

William Brunson (Brunson) appeals from the judgment of sentence

imposed by the Court of Common Pleas of Philadelphia County (trial court)

---

[*] Retired Senior Judge assigned to the Superior Court.

after a jury found him guilty of various sexual offenses committed against his grandsons. On appeal, he challenges the weight of the evidence. We affirm.

At the end of a two-day jury trial held in July 2021, Brunson was convicted of two counts each of involuntary deviate sexual intercourse (IDSI) with a child, indecent assault of a person under 13 years old, endangering the welfare of a child and unlawful contact with a minor.[1] The two victims were Brunson's grandsons: S.N. (born 2013) and S.C.W. (born 2011). The mother of the two boys was Brunson's daughter, Lucretia. Brunson committed the offenses while living with Lucretia and her children (and several other family members) in the home of the children's great-aunt, Jaleecia. Because the offenses were committed in June 2017, S.N. and S.C.W. would have been three and six years old at the time of the offenses, respectively.

The trial summarized the evidence presented at trial as follows:

> S.N. testified that on one occasion several years earlier, when he was three or four, he was in Pop Pop's bedroom, in the city and county of Philadelphia, watching a movie with his older brother S.C.W. and his Pop Pop, Defendant William Brunson. N.T. Trial 6/9/21, at 53-56. S.N. testified that while in the room, Pop Pop pulled down S.N.'s pants and Pop Pop put his penis in S.N.'s butt. *Id*. at 56. S.N. further stated that Pop Pop used his hand to physically cover S.N.'s mouth while Pop Pop put his penis in S.N.'s butt and that S.N. tried to scream but could not. *Id*. at 103. S.N. testified that he was touched one time and that his Pop Pop never put his penis in S.N.'s mouth. *Id*. at 65, 74. S.N. testified that the incident ended when his uncle, Qaudir, came into the room, saw what was happening, helped both children and they ran and told their mom, Lucretia. *Id*. at 95-97.

---

[1] 18 Pa.C.S. §§ 3123(b), 3126(a)(7), 4304(a)(1) and 6318(a)(1).

S.C.W. testified to an occasion four years earlier at his Aunt Jaleecia's house, Jaleecia Wells, where he was called into his Pop Pop's bedroom along with his brother S.N. *Id*. at 110-12. At the time, S.C.W. was six years old. *Id*. at 125. S.C.W. testified that in the room Pop Pop touched S.C.W.'s butt with his "D" [penis] and "that was it". *Id*. at 118. Upon further examination, S.C.W. testified that Pop Pop's "D" went around his butt, not inside. *Id*. at 120. S.C.W. further testified that Pop Pop then put his penis around S.N.'s butt. *Id*. at 121. S.C.W. explicitly stated multiple times that Pop Pop never put his penis in S.C.W.'s mouth or anywhere other than around his butt. *Id*. at 121-23. S.C.W. likewise testified to never observing Pop Pop put his penis in S.N.'s mouth or anywhere other than around his butt. *Id*. S.N. testified that he tried to escape but Pop Pop grabbed his arms and dragged him back into the room. *Id*. at 159-60. The incident ended when S.N. ran out of the room for help and told his mother. *Id*. at 152.

Jeffery Daly of the Philadelphia Police, Special Victims Unit testified that on June 24, 2017, he was assigned to investigate the alleged assault of S.N. and S.C.W., by their grandfather, William Brunson. *Id*. at 167-68. In that capacity, he interviewed Lucretia, the mother of the children. *Id*. He testified that she was the only individual he interviewed and that he did not attempt to obtain any evidence because the disclosure occurred four days after the alleged assault. *Id*. at 171-72.

Baron Martin, Social Worker for Philadelphia Department of Human Services, testified that he was assigned to an allegation of child abuse at 123 West Ashmead Street in June of 2017. *Id*. at 196-200. As part of his investigation, he went out to that address on June 25, 2017, where he met with Lucretia, the mother of the children. *Id*. at 201. Mr. Martin testified he observed Lucretia to be frantic. *Id*. Lucretia explained to Mr. Martin that William Brunson had sexually assaulted the children while she ran out to the deli. *Id*. at 202. Mr. Martin explained that his visit to the home was unannounced and that he was not able to speak with the children. *Id*. at 205. Furthermore, the children had not been taken to a hospital for medical examination. *Id*. at 207. Upon cross examination, Mr. Martin stated that while he attempted to interview Lucretia regarding the allegations, she was not able to specifically answer how the boys had been assaulted; rather, "she said, I quote 'he did it.'" *Id*.

Lucretia testified that in June of 2017 she was living with her aunt at 123 Ashmead with her two sons, S.C.W. and S.N. N.T. Trial, 6/10/21 at 3-6. Lucretia testified that around June 24th she was scrolling through social media when S.N. told her that Pop Pop, whom she identified as her father William Brunson, had shown him pictures with girls in ripped panties, like the pictures Lucretia was looking at. *Id*. at 16. She stated at first she was not concerned but later decided to follow-up on her son's statement. *Id*. at 15. She stated that S.N. told her that Pop Pop was "humping on him." *Id*. at 16. She stated that upon hearing this, she went and confronted S.C.W. who also said Pop Pop had been "humping on him" and stated that "it did not go in because it hurted." *Id*. at 17-18. Lucretia further testified that she and her aunt then examined the children's privates and noticed that S.C.W.'s rectum was red. *Id*. at 19-20.

Lucretia further testified that she had left her sons in the care of William Brunson on June 21, 2017, for a couple of hours while she went to the laundromat. *Id*. at 87. She stated when she left the house it was the afternoon and her sons as well as some of the other children in the home were running around and playing. *Id*. at 88. She stated when she returned the house seemed normal, just messier from the playing, and that no one complained about any inappropriate touching. *Id*. at 87-92. Lucretia further stated that on the morning of June 24th, the day her children disclosed, she had previously gotten into an argument with Mr. Brunson for an unrecalled reason and had kicked him out of the home. *Id*. at 48, 94.

Christian Dozier, forensic interviewer for Philadelphia Children's Alliance testified to conducting a forensic interview of S.N. and S.C.W. on July 12, 2017. *Id*. at 125-126. Ms. Dozier testified to noting S.N.'s inability to explain what happens when people lie and what would happen if someone lied to his mother. *Id*. at 131. Ms. Dozier further testified that she was not concerned with the three-week delay between disclosure and interview, although she acknowledged the importance of interviewing children as close to disclosure as possible. *Id*. at 143-45. Additionally, S.N. testified that he spoke with his mother after Pop Pop was arrested and his mother told him what to say and how to say it. *Id*. at 99.

The Commonwealth presented a video-taped interview of S.N. conducted at Philadelphia Children's Alliance on July 12,

- 4 -

2017. In the video, S.N. stated that Will [Defendant] pulled his pants down and put his dick in his and S.C.W.'s butt cheeks. He stated that Will put his dick on the floor and asked to be his boyfriend. At first, S.N. stated that nothing happened with his mouth but later in the interview said that Will put his dick in both his mouth and his brother's. S.N. stated that his brothers, Zadeek and Quadir were present. S.N. further stated that he was shown naked pictures and that Tayone[, an older family member,] was in them. S.N. described Will as a bitch and as gay but was not able to answer what it means to be gay.

The Commonwealth presented a video interview of S.C.W. conducted at Philadelphia Children's Alliance on July 12, 2017. S.C.W. stated that Pop Pop showed him naked pictures, put his "D" in his mouth, and humped on him. S.C.W. stated that his dick went on the outside of his butthole and it felt sloppy and hairy. S.C.W. stated that he threw up after Will put his penis in his mouth and made a gagging gesture. He further stated that it happened on more than one day and on days when Pop Pop got smart with his mom.

Jaleecia Wells testified that in June of 2017 her niece, Lucretia, awoke her crying that William Brunson had touched her children, S.N. and S.C.W. *Id*. at 161-62. She testified that she asked to check the kids but S.C.W. said no. *Id*. at 162-63. Ms. Wells further stated that S.N. told her that Pop Pop "touched me down there", that "he would jerk off in the middle of their butts" and make them watch "nasty videos." *Id*. at 166-67. Ms. Wells stated that she examined S.N.'s butt and noticed redness as well as something "linty, like somebody tried to wipe it off." *Id*. at 167. Ms. Wells testified that her examination of S.N. took place on June 24, 2017, four days after the incident. *Id*.

Ms. Wells further testified to being present when Lucretia spoke to police but to not having made a statement herself at such time. *Id*. at 165-66, 172. Ms. Wells did not recall ever speaking to any DHS worker but did recall a worker coming out to the house. *Id*. at 173. Medical records were presented by stipulation of counsel indicating that both S.C.W. and S.N. were evaluated at Saint Christopher's Hospital for Children on June 25, 2017, at 9 p.m. Both children were evaluated for alleged sexual assault to mouth and anus and neither child displayed any associated symptoms; rather both children appeared healthy, with normal

genitalia and anus, and had no complaints of pain, vomiting, or discomfort. *Id*. at 180-183.

Trial Court Opinion, 10/31/22, at 1-6 (cleaned up; footnotes omitted).

On October 6, 2021, the trial court imposed concurrent sentences of 6 to 15 years' imprisonment for both counts of IDSI and no further penalty on the remaining counts. After sentencing, Brunson filed a timely post-sentence motion for a new trial alleging that the jury's verdict was against the weight of the evidence. That motion was denied by operation of law on February 15, 2022, after which Brunson filed this appeal.[2] On appeal, he challenges the denial of his post-sentence motion to set aside the jury's verdict as being against the weight of the evidence.[3]

_____

[2] The order denying the post-sentence motion by operation of law listed both trial court dockets. When a single order resolves issues arising on more than one docket, separate notices of appeal must be filed from that order at each docket. *See Commonwealth v. Young*, 265 A.3d 462, 477 (Pa. 2021). Brunson filed a notice of appeal at each separate trial court docket number, listing both docket numbers on each notice. *See Commonwealth v. Johnson*, 236 A.3d 1141, 1148 (Pa. Super. 2020) (en banc). We consolidated the appeals *sua sponte*.

[3] Our standard of review for a challenge to the denial of a motion for a new trial based on the weight of the evidence is well settled.

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

**I.**

On appeal, Brunson raises several arguments for why the jury's verdict was against the weight of the evidence. First, he alleges that the boys' mother fabricated the allegations because she admitted that she disliked Brunson and wanted him out of the house. Second, he contends that the boys were coached on what to say because both contradicted their forensic interviews in trial in the same manner. Third, he emphasizes that there was no physical evidence of injuries to corroborate the boys' allegations. Fourth and finally, Brunson alleges that the jury ignored character evidence that he admitted at trial.

---

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.
>
> To successfully challenge the weight of the evidence, a defendant must prove the evidence is so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

***Commonwealth v. Arias***, 286 A.3d 341, 352 (Pa. Super. 2022) (citations and quotation marks omitted).

**A.**

Brunson first contends that the boys' mother fabricated the allegations against Brunson because of her hatred for him and that she enlisted her two sons to lie about the abuse to get him out of house. In support, Brunson notes that she admitted at trial that before the boys disclosed the abuse to her, she was angry with Brunson.

Q. When is the last time you saw your father, prior to today?

A. The day that my son told me everything, we was arguing that morning.

Q. About what?

A. I did not like him for some reason. I don't know if it was me pregnant, but my feelings was just not right with him.

Q. What do you mean?

A. Like I just did not like him. Just to look at him just made me mad.

Q. Why?

A. That's the thing, I didn't know. Maybe it was my pregnant emotions. Like, I was pregnant, I mean maybe just the pregnant emotion, but something did not sit right with me with him.

N.T., 6/10/21, at 48.

While the boys' mother admitted to having a frayed, contentious relationship with her father, it was the jury's prerogative to determine her credibility and whether she fabricated the allegations. ***See Commonwealth v. Wallace***, 244 A.3d 1261, 1277 (Pa. Super. 2021) ("The weight of the evidence is exclusively for the finder of fact, which is free to believe all, part,

or none of the evidence, and to assess the credibility of the witnesses.") (citation omitted). That the boys' mother testified that she was upset with Brunson before she contacted the police does not equate to an abuse of the trial court's discretion where it concluded that the verdict was not against the weight of the evidence. Rather, it appears that the jury credited the children's testimony about the abuse as truthful and rejected Brunson's argument that the boys' mother fabricated the allegations and coaxed her two sons into lying about the abuse. Under such circumstances, we will not intrude on the jury's credibility determination and find that the trial court abused its discretion in denying a new trial. *See Commonwealth v. Carter*, 195 A.3d 594, 601 (Pa. Super. 2018) (rejecting weight of the evidence claim that victim had motive to fabricate because jury viewed and credited victim's testimony); *see also Commonwealth v. Tharp*, 830 A.2d 519, 528 (Pa. 2003) ("A verdict is not contrary to the weight of the evidence because of a conflict in testimony"); *Commonwealth v. Furness*, 153 A.3d 397, 404 (Pa. Super. 2016) (rejecting defendant's weight claim and explaining that credibility and conflicts in evidence are for the fact-finder to resolve; a reviewing Court may not disturb these findings).

**B.**

Brunson's second argument is similarly premised on his contention that the boys lied about the allegations and were coached by their mother about what to say. Brunson bases this contention on the inconsistencies between

the boys' forensic interviews and their trial testimony. On this point, Brunson highlights that each boy's testimony varied in the same ways; namely, the frequency and the type of abuse. He points out that the boys told the forensic interviewer that the abuse was both anal and oral and happened several times, while at trial, the boys testified that the abuse was only anal and happened only once. Brunson also notes that the boys' testimony about revealing the abuse differed from the boys' mother's claims about how the boys disclosed the abuse.

Again, however, it was for the jury to resolve the inconsistencies in the boys' testimony about what kind and how often Brunson abused them.[4] Indeed, as noted above, "the jury was the ultimate fact-finder and the sole arbiter of the credibility of each of the witnesses." ***Commonwealth v. Jacoby***, 170 A.3d 1065, 1080 (Pa. 2017). "Issues of witness credibility include questions of inconsistent testimony..." ***Id***. at 1081 (citation omitted). "A jury is entitled to resolve any inconsistencies in the Commonwealth's evidence in the manner that it sees fit." ***Id***. (citation omitted).

Here, the jury heard both the boys' testimony and viewed their forensic interviews from July 2017 about the abuse. While there were inconsistencies

---

[4] Contrary to Brunson's argument, S.N. did not testify at trial that Brunson only abused him anally. Instead, S.N. testified that he saw Brunson "put his penis in my brother's mouth and his butt." N.T., 6/9/21, at 63. When asked if he did the same thing to him, S.N. replied, "Yes." ***Id***.

- 10 -

between the testimony and interviews, none of the inconsistencies rose to the level required for this Court to reverse the determination of the trial court, which had the opportunity to hear and see the evidence, concerning the weight of the evidence. *See Cramer*, *supra* at 601 (when trial court finds a verdict not against the weight of the evidence, appellate court must give gravest consideration to trial court's conclusion because it had opportunity to hear and see evidence presented).

**C.**

Brunson next focuses on the lack of any physical evidence to corroborate that he abused the boys. At trial, the parties entered into a stipulation that the boys' mother took them to the hospital on June 25, 2017, because of the allegations. Neither child had any tears or lacerations, nor any rashes or abrasions; both were tested for sexually transmitted diseases and found to be negative. Furthermore, because the alleged abuse happened four days before the examination, no evidence collection kit was used. *See* N.T., 6/10/21, at 180-83. Brunson believes that the absence of any physical evidence corroborating the abuse claims supports his contention that the allegations were fabricated.

However, "the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient" to sustain a conviction. *See Commonwealth v. Diaz*, 152 A.3d 1040, 1047 (Pa. Super. 2016) (citation omitted); *see also* 18 Pa.C.S. § 3106 (explaining that the "testimony of a

complainant need not be corroborated in prosecutions" for sexual offenses). That the Commonwealth did not present evidence about the boys suffering any injuries as a result of the abuse is of little import, as the examination did not occur until several days after the alleged abuse. The jury was free to determine what weight to give to the lack of any corroborating physical evidence, and we will not disturb the trial court's determination concerning weight on this basis. Here, the jury credited S.N. and S.C.W. about what happened, and their testimony was sufficient on its own to support its verdict. **See Commonwealth v. Johnson**, 180 A.3d 474, 479 (Pa. Super. 2018) (holding that a victim's testimony alone, if believed by the fact-finder, is sufficient to sustain a conviction).[5]

Brunson also contends that this case is factually analogous to **Commonwealth v. Karkaria**, 625 A.2d 1167 (Pa. 1993). There, our Supreme Court reversed the defendant's conviction of forcibly raping his 14-year-old stepsister, holding that the Commonwealth's evidence, in its entirety, was so unreliable and contradictory that the conviction could not have been based upon anything other than conjecture and surmise. In so doing, the

---

[5] We also reject Brunson's argument that the jury's verdict is against the weight of the evidence because the police failed to obtain Brunson's cell phone records to corroborate that he showed the children pornographic materials. Like the lack of any physical evidence, the jury was free to determine what weight to give to the police decision not to obtain Brunson's cell phone records to check his browser history. At trial, the investigating detective testified he was not an expert on the matter and was not sure if he would have been able to obtain such records. **See** N.T., 6/9/21, at 187.

Court acknowledged that questions of credibility are to be resolved by the finder of fact and the verdict will not be disturbed if the evidence is credible, but also recognized the following:

> This concept, however, must be distinguished from an equally fundamental principle, that a verdict of guilt may not be based upon surmise or conjecture. Following this principle, courts of this jurisdiction have recognized that where evidence offered to support a verdict of guilt is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, a jury may not be permitted to return such a finding.

*Id*. at 1170 (citations omitted).

With this in mind, our Supreme Court determined that the record was "riddled with inconsistencies" and observed that the victim's testimony was "disturbingly vague," thus casting "serious doubt upon the jury's ability" to find that the crime of rape occurred during the time alleged. *Id*. at 1171. The alleged rape victim could not provide the date of any alleged assault, and in her initial report to police, was unable to recall the defendant ever penetrating her. *Id*. Additionally, other witnesses testified that the defendant was rarely in the home during the charged time. *Id*. As a result, our Supreme Court held that the evidence, "carefully reviewed in its entirety, is so unreliable and contradictory that it is incapable of supporting a verdict of guilty, and thus, is insufficient as a matter of law." *Id*. at 1172.

After review, we do not agree with Brunson's contention that this matter is like *Karkaria* where the trial court rendered a verdict based solely upon vague and contradictory evidence that failed to establish the elements of the

crimes charged. First, there is no dispute that the boys' testimony and their forensic interviews contained inconsistencies about what happened; namely, about whether Brunson abused them both anally and orally, as well as how many times it happened. That said, there was no such evidence rendering the boys' claims impossible. Thus, despite some mere inconsistencies in the evidence, the jury credited S.N.'s and S.C.W.'s testimony that Brunson committed the sexual offenses against them while he was living with them.

In contrast, in **Karkaria**, the alleged victim's own testimony disproved her allegations of rape because the timeframe when she said the rapes occurred was contradicted by uncontested evidence about when the defendant and his brother would have been in the house, thus making her claims factually impossible when she claimed they happened. In contrast, here, while there were inconsistencies concerning certain aspects of the Commonwealth's evidence, there was no evidence that would render the boys' allegations factually impossible like that involved in **Karkaria**. In the absence of such evidence, we will not disturb the trial court's determination that the jury's verdict was against the weight of the evidence. *See Commonwealth v. Izurieta*, 171 A.3d 803, 809-10 (Pa. Super. 2017) (affirming denial of defendant's weight of the evidence claim based on argument that minor victim was not credible and testified inconsistently because determination of victim's credibility was within exclusive province of the jury).

**D.**

In his fourth and final argument, Brunson argues that the jury's verdict was against the weight of the evidence because he presented three witnesses at trial who testified about his law-abiding reputation. Again, however, it was within the jury's prerogative as fact-finder to determine what weight (if any) to give these character witnesses and weigh it against the testimony of his two grandsons that he committed the sexual offenses against them in June 2017. Even if the jury credited this character evidence, it was still free to credit the boys' testimony and convict Brunson of the offenses. Accordingly, for all these reasons, we discern no abuse of discretion in the trial court's denial of Brunson's motion for a new trial based on the weight of the evidence. *See Commonwealth v. Brown*, 212 A.3d 1076, 1085 (Pa. Super. 2019) (finding no abuse of discretion in trial court's rejection of weight claim where defendant presented his own testimony and several character witnesses).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/22/2023