J-A02009-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| COREY LEE SICKLES | : | |
| | : | |
| Appellant | : | No. 190 WDA 2025 |
| | : | |

Appeal from the Judgment of Sentence Entered December 30, 2024
In the Court of Common Pleas of Fayette County
Criminal Division at No: CP-26-CR-0001079-2023

BEFORE:  STABILE, J., MURRAY, J., and BECK, J.

MEMORANDUM BY STABILE, J.:                **FILED:  April 8, 2026**

Appellant, Corey Lee Sickles, appeals from the judgment of sentence imposed on December 30, 2024, by the Court of Common Pleas of Fayette County.  He challenges the sufficiency and weight of the evidence to support his rape of child, statutory sexual assault and corruption of minors convictions. Upon review, we affirm.

On December 17, 2022, the victim, A.S., was having a sleepover with a friend, S.G.  N.T. Trial Day 1, 8/5/24, at 117.  A.S. was 12 years old and in seventh grade at the time.  *Id.*  During the school week, A.S. stayed with her legal guardian, Victoria Metts, who lived one block away from A.S.'s father,

Vincent Sickles.[1]  *Id.* at 49-50, 114-15.  A.S. lived with her father on the weekends.  *Id.*  Vincent's home consists of a single wide trailer attached to a small house, connected by a hallway.  N.T. Trial Day 2, 8/6/24, at 112. Vincent's bedroom was in the house, along with a large living room.  *Id.* at 113.  A.S.'s bedroom was in the trailer at the end of the hallway, furthest from the back door.  *Id.* at 115, 118.  The bathroom was next to the back door. *Id.* at 117-18.

Across the street from Vincent's home was a car garage owned by his son, Stephen Sickles.  *Id.* at 111.  Appellant is Vincent's grandson and A.S.'s nephew.  N.T. Trial Day 1, 8/5/24, at 113, 115.  Appellant worked at Stephen's garage and had free reign of Vincent's home, often stopping by unannounced at all times of the day and night.  *Id.* at 43, 115, 122.  As such, Appellant always parked his vehicle in the same spot.  N.T. Trial Day 2, 8/6/24, at 42-43, 125.

The sleepover was on a Friday night; therefore, the girls were in A.S.'s room in Vincent's home.  N.T. Trial Day 1, 8/5/24, at 117-18.  The girls were listening to music on the television and playing on their phones.  *Id.* at 118.

_____

[1] Vincent Sickles is not A.S.'s biological father; however, he is the only father she has ever known.  N.T. Trial Day 2, 8/6/24, at 129.  A.S.'s biological mother was a drug addict and passed away in July 2022. N.T. Trial Day 1, 8/5/24, at 114.  Since A.S.'s mother was an addict and Vincent was older, A.S. lived with Victoria during the school week because it was easier for Victoria to get A.S. ready for school.  *Id.* at 49, 114.

Throughout the night, A.S. heard the back door open and close[2], but thought nothing of it because she assumed it was Appellant. *Id.* at 122. Sometime after midnight, A.S. got up to use the restroom. *Id.* at 123. When she reached the bathroom, the lights were off and the door cracked open. *Id.* at 125. A.S. went inside the bathroom, closed and locked the door, and then turned on the lights. *Id.* As she did so, she felt someone's hands on her waist. *Id.* When A.S. turned around, she saw it was Appellant. *Id.* at 125-26.

Appellant tried to force A.S.'s hoodie off, but she kept pushing him away and yelling at him to get off her. *Id.* at 127. Eventually, Appellant was able to immobilize A.S.'s arms and picked her up and put her on the sink. *Id.* at 128-29. A.S.'s buttocks were partially in the sink, and the faucet pressed against her back. *Id.* at 129. A.S. continued to yell until Appellant put his hand over her mouth with such force that it caused her fake nose ring to pierce the skin. *Id.* at 129-30.

Appellant forcefully pulled A.S.'s black shorts and underwear down. *Id.* at 131. Appellant then used his fingers to locate A.S.'s vagina, and once he did, forced his penis inside of her. *Id.* at 132. A.S. testified that the incident

---

[2] S.G. testified that she also heard the back door open and close a couple times before A.S. went to the bathroom. N.T. Trial Day 1, 8/5/24, at 76.

Surveillance video showed someone entered the back door of Vincent's trailer and exited approximately 10 minutes later, entered a vehicle parked in Appellant's usual spot, and drove away around 1:54 a.m. on December 18, 2022. *Id.* at 41-42.

lasted 10-15 minutes before Appellant stopped, zipped up his pants and left through the back door. *Id.* at 133. Before leaving, Appellant told A.S. that if she told anyone, he would hurt her badly. *Id.* A.S. stood there for a few minutes, put her clothes back on and went back into her room. *Id.* at 134.

When A.S. opened her bedroom door, it awoke S.G., who had fallen asleep. *Id.* at 135. S.G. testified that A.S. appeared upset and not herself when she came back into the room. *Id.* at 72. S.G. asked A.S. if she was okay, and A.S. said she was fine. *Id.* The girls stayed awake for another hour before going to sleep. *Id.* at 135.

The next morning, A.S. told S.G. that Appellant raped her when she went to the bathroom. *Id.* at 82, 136. S.G. told A.S. that she had three days to tell someone, and if she did not, then S.G. would tell someone what happened. *Id.* at 72-73, 137.

On Monday, December 19, 2022, A.S. sent an email to her vice principal, Bobby Downs, and asked her to speak about something important. *Id.* at 20. Ms. Downs replied and told A.S. they could meet in her office. *Id.* at 21. A.S. told Ms. Downs that Appellant assaulted her over the weekend.[3] *Id.* at 22-23. As a mandated reporter, Ms. Downs contacted Fayette County Children and Youth Services via Childline to report the allegations. *Id.* at 23. She also notified Scott Croftcheck, the assistant to the school police, who in turn contacted the Pennsylvania State Police. *Id.*

---

[3] A.S. told Ms. Downs that S.G. was staying at her house when this occurred. N.T. Trial Day 1, 8/5/24, at 26.

- 4 -

While awaiting the troopers' arrival, Ms. Downs contacted Victoria, who immediately went to the school. *Id.* at 24, 51-52. Victoria testified that A.S. appeared nervous and scared. *Id.* at 53. Troopers Anthony Svetz and Nicholas Kunz arrived at the school and interviewed A.S. in Victoria's presence. N.T. Trial Day 2, 8/6/24, at 133. After taking A.S.'s statement, the troopers left to secure a search warrant for Vincent's home because A.S. relayed that the black shorts she was wearing the night of the assault were in A.S.'s room. *Id.* at 134.

In the meantime, Victoria took A.S. to the hospital for a sexual assault examination. N.T. Trial Day 1, 8/5/24, at 53. They ultimately had to travel to Ruby's Children Hospital in Morgantown, West Virginia, because their local hospital was unable to do it. *Id.* at 54. A.S. underwent a sexual assault examination and provided the underwear from the night of the assault to the hospital. *Id.* at 55. Molly Biega, a certified sexual assault nurse examiner (SANE), conducted the examination of A.S. N.T. Trial Day 2, 8/6/24, at 48, 51. Ms. Biega noted that A.S. had some tenderness and secretions around her labia, but no bruising near the vagina. *Id.* at 57-58. A.S. had a .5-centimeter bruise on her left knee and a .5-centimeter circular abrasion on her back. *Id.* at 64.

Ms. Biega testified that it was not unusual for a sexual assault victim to not have lacerations, swelling or other physical injuries in and around the vaginal area. *Id.* at 71. She explained that the vagina heals very quickly and just because there is no physical injury, does not mean there was not an

assault. *Id.* at 71-72. During the examination, and based on the information provided by A.S., hospital staff swabbed A.S.'s vagina, anus, back, breast, and neck. The swabs, as well as A.S.'s underwear, were packaged for analysis.

Michelle Barch, a forensic scientist in the Pennsylvania State Police crime lab, conducted serological analysis of the evidence. N.T. Trial Day 1, 8/5/24, at 88-89. The vaginal and anal swabs were negative for seminal fluid. *Id.* at 99. The neck swabs were positive for saliva. *Id.* The back swabs were negative for saliva. *Id.* at 100. Analysis of A.S.'s underwear revealed sperm cells and/or seminal fluid on the crotch panel and near the upper left waistband area. *Id.* at 97-98. The remaining samples were not analyzed. Ms. Barch then packaged the vaginal swabs, neck swabs and a clipping of the crotch panel for DNA analysis. *Id.* at 101-02.

Joseph Kukosky, a forensic DNA scientist in the Pennsylvania State Police crime lab, conducted DNA analysis on the evidence. N.T. Trial Day 2, 8/6/24, at 75, 78. He was unable to analyze the vaginal swabs because there was an insufficient amount of DNA on the sample. *Id.* at 85. Analysis of the neck swabs excluded Appellant as a contributor. *Id.* at 86. The crotch area of A.S.'s underwear contained a DNA profile consistent with a mixture of two contributors. *Id.* at 87-88. Mr. Kukosky opined that it was "6.8 octillion times more likely if [the DNA] originated from [A.S.] and [Appellant] than if it had originated from [A.S.] and another unknown, unrelated individual in the population." *Id.* at 88.

Following a three-day trial, a jury convicted Appellant of rape of a child, statutory sexual assault and corruption of minors. Sentencing was deferred for an evaluation by the Sexual Offenders Assessment Board ("SOAB") to determine whether Appellant was a sexually violent predator ("SVP"). On December 30, 2024, after hearing, Appellant was sentenced to an aggregate 12 to 24 years imprisonment and deemed a SVP. Appellant filed a post-sentence motion, which was denied by the trial court on January 22, 2025. This timely appeal followed.

Appellant raises the following issues for our review:

1. Whether the trial court abused its discretion in finding that the verdict of guilty for rape of a child, 18 Pa.C.S.A. § 3121(c) was not against the weight of the evidence[.]

2. Whether the trial court abused its discretion in finding that the verdict of guilty for [] statutory sexual assault, 18 Pa.C.S.A. § 3122.1(a)(2) was not against the weight of the evidence[.]

3. Whether the trial court abused its discretion in finding that the verdict of guilty for [] corruption of minors, defendant 18 or above, 18 Pa.C.S.A. § 6301(A)(1)(ii) was not against the weight of the evidence[.]

4. Whether the conviction for rape of a child . . . was legally insufficient in that the verdict failed to establish each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt[.]

5. Whether the conviction for statutory sexual assault . . . was legally insufficient in that the verdict failed to establish each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt[.]

6. Whether the conviction for corruption of minors . . . was legally insufficient in that the verdict failed to establish each material

- 7 -

element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt[.]

7. Whether the assistant district attorney in his closing argument to the jury misstated the facts of evidence concerning the testimony and report of the DNA expert as conclusively being the DNA of [Appellant] found in the victim's underwear and that the jury was unable to weigh the evidence fairly and further as a result so as having the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward [Appellant], thus impeding their ability to weigh the DNA evidence objectively and render a true verdict[.]

8. The honorable court erred in failing to contemporaneously curatively instruct and/or instruct the jury on the assistant district attorney's misstatement of the DNA evidence to the jury based on the prejudicial nature of the misstatement and its unavoidable effect of depriving [Appellant] of a fair and impartial trial[.]

9. Whether the honorable court erred in finding [Appellant] as a sexually violent predator in that the Commonwealth failed to sustain its burden by clear and convincing evidence through the testimony/report of Tracey Boyle[.][4]

Appellant's Brief, at 5-6 (unnecessary capitalization omitted).

We begin with Appellant's sufficiency claims. For a challenge to the sufficiency of the evidence, our standard of review is:

whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be

_____

[4] Per Appellant's brief, he withdraws this issue. *See* Appellant's Brief, at 6 n.1.

resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

*Commonwealth v. Smith*, 206 A.3d 551, 557 (Pa. Super. 2019) (citation omitted).

Appellant was convicted of rape of a child, statutory sexual assault and corruption of minors. For the offense of rape of a child, the Commonwealth must prove that Appellant "engage[d] in sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S.A. § 3121(c). For statutory sexual assault, the Commonwealth must prove Appellant "engage[d] in sexual intercourse with a complainant . . . under the age of 16 years and that [Appellant] is . . . eight years older but less than 11 years older than the complainant." 18 Pa.C.S.A. § 3122.1(a)(2). Corruption of minors is defined as:

Whoever, being of the age of 18 years and upwards, by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of an offense under Chapter 31 commits a felony of the third degree.

18 Pa.C.S.A. § 6301(a)(1)(ii).

On appeal, the only element Appellant challenges is whether the Commonwealth proved that sexual intercourse occurred.[5]  ***See*** Appellant's Brief at 15-20.  "In addition to its ordinary meaning, [sexual intercourse] includes per os or per anus, with some penetration however slight; emission is not required."  18 Pa.C.S.A. § 3101 (definitions).

Appellant argues that the Commonwealth failed to prove sexual intercourse because (1) there were discrepancies between the testimony of A.S. and S.G. as to the time that A.S. went to the bathroom; (2) S.G. told the troopers that A.S. changed her story multiple times; (3) A.S. was unsure whether Appellant ejaculated; (4) A.S. admitted to initially withholding the fact that S.G. was there from the troopers; (5) the vaginal and anal swabs were negative for seminal fluid and did not contain Appellant's DNA; (6) the serologist could not state when the seminal fluid was deposited on A.S.'s underwear; and (7) there were no injuries to A.S.'s vagina.  ***See*** Appellant's Brief, at 16-17.  "Given the paucity of the testimony . . ., the Commonwealth failed to prove beyond a reasonable doubt that the Appellant engaged in sexual intercourse with A.S."  ***Id.*** at 18.  We disagree.

_____

[5] We note that we could find waiver of the sufficiency claims because Appellant failed to specify the element or elements challenged in his Rule 1925(b) statement.  ***See Commonwealth v. McFarland***, 278 A.3d 369, 381 (Pa. Super. 2022) (citation omitted).  Because Appellant specified the element challenged (sexual intercourse) in his brief and the trial court addressed his sufficiency claims, we decline to find waiver in this case.  ***See Commonwealth v. Martz***, 2022 WL 1698148 at *2 n.5 (Pa. Super. filed May 27, 2022) (unpublished memorandum).

It is well-established that "the uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses." **_Commonwealth v. Cramer_**, 195 A.3d 594, 602 (Pa. Super. 2018). A.S. testified that Appellant forced her shorts and underwear down and used his finger to feel around for the opening of her vagina before inserting his penis into her vagina. She stated that the intercourse lasted 10 to 15 minutes, which is consistent with the surveillance video showing an individual enter the back door of the trial and remain inside for about 10 minutes before exiting. Her testimony was consistent with what she told S.G., Ms. Downs, Ms. Metts and Troopers Svetz and Kunz. The only discrepancy was that A.S. initially did not tell the troopers that S.G. was in the home when the assault happened. This discrepancy was fully explored by defense counsel during trial. Thus, A.S.'s testimony, alone, was sufficient to prove sexual intercourse.

Accordingly, we conclude there was sufficient evidence to sustain Appellant's convictions of rape of a child, statutory sexual assault and corruption of minors.

Alternatively, Appellant challenges the weight of the evidence. Appellant listed specific pieces of evidence and generally argued that "[t]he trial court . . . ignored all of these inconsistencies in the trial record which was manifestly unreasonable thereby constituting and abuse of discretion." Appellant's Brief, at 12-15.

A challenge to the weight of the evidence concedes that there was sufficient evidence to sustain the verdict. *See Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). We employ the following standard:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing the trial court's determination that the verdict is against the weight of the evidence.

> However, the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is not unfettered. The propriety of the exercise of discretion in such an instance may be assessed by the appellate process when it is apparent that there was an abuse of that discretion. This court summarized the limits of discretion as follows:

>> The term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Id.* at 753 (citations omitted).

Appellant fails to establish, and our review of the record fails to convince us, that the trial court abused its discretion in finding that the verdicts were

not so contrary to the evidence as to shock one's sense of justice. He simply invites this Court to substitute our own judgment for that of the jury regarding the evidence presented and the credibility of the witnesses. That is not the role of this Court; therefore, no relief is due.

Appellant's last two issues are related; therefore, we will address them together. He contends that the assistant district attorney committed prosecutorial misconduct in his closing argument by misstating the DNA expert's conclusions, thereby vouching for his credibility. **See** Appellant's Brief, at 20-22. He further argues that the trial court abused its discretion when it denied his request for a curative instruction. **See id.**

We review a claim of prosecutorial misconduct for abuse of discretion. **Commonwealth v. Melvin**, 103 A.3d 1, 26 (Pa. 2014). We are guided by the following principles:

> This Court has explained that comments made by a prosecutor to a jury during closing argument will not form the basis for granting a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict. Like the defense, the prosecution is accorded reasonable latitude and may employ oratorical flair in arguing its version of the case to the jury. Prosecutorial misconduct will not be found where the comments were based on the evidence or derived from proper inferences.
>
> Generally speaking, a prosecutor commits misconduct by improperly bolstering the credibility of a Commonwealth witness when the following two factors are met: (1) the prosecutor must assure the jury the testimony of the government witness is credible; and (2) this assurance must be based on either the prosecutor's personal knowledge or other information not

- 13 -

contained in the record. We further observe that a prosecutor may make fair comment on the admitted evidence and may provide fair rebuttal to defense arguments. Even an otherwise improper comment may be appropriate if it is in fair response to defense counsel's remarks. Any challenge to a prosecutor's comment must be evaluated in the context in which the comment was made. In addition, we must presume that the jury followed the trial court's instructions.

***Commonwealth v. Reid***, 259 A.3d 395, 429 (Pa. 2021) (citations and quotations omitted).

During trial, Mr. Kukosky, the DNA expert, testified that it was "6.8 octillion times more likely if [the DNA] originated from [A.S.] and [Appellant] than if it had originated from [A.S.] and another unknown, unrelated individual in the population." N.T. Trial Day 2, 8/5/24 at 88. When a sample contains a mixture of DNA, the statistical calculation is different than when a sample only contains DNA of one individual:

> In this instance it was a mixture of people so I couldn't say a person matches the D.N.A. profile that I obtained. I can give weight in the form of statistics and give you a probability or a likelihood that that person's D.N.A. is in that mixture.
>
> * * * *
>
> It's a combination of both those individual[s], if the[ir] D.N.A. was present in that mixture, that's the . . . likelihood that it's both of those individuals[.] [W]e assume that [A.S.'s] D.N.A. is already there if they were her underwear . . . and that's accounted for in our statistic. And then comparing [the known sample of Appellant's D.N.A.] along with her gives me that statistic, that both individuals are in that D.N.A. sample to that level of statistic[.]

***Id.*** at 98-99, 102.

Prior to closing arguments, the trial court provided the following instructions to the jury related to closing arguments:

> Even though **these arguments do not constitute evidence** you should consider them very carefully. In their arguments counsel may call to your attention the evidence they consider to be material. They may ask you to draw certain inferences from that evidence. Please keep in mind, however, that **you are not bound by counsel's recollection of the evidence**. It is your recollection and yours alone which must guide your deliberations. If there is **any discrepancy between counsel's recollection and your recollection of the evidence, you are bound by your own recollection**.

N.T. Trial Day 3, 8/7/24, at 5-6 (emphases added).

The prosecutor made the following comments regarding the DNA evidence during its closing:

> You have to keep in mind in allowing you to reach justice in this case, the type of case this is. And I have a sheet of paper here and at the top I have written across it, corroboration. Really what that is is believability and I'm going to just use that sheet to go down through some, some points that I have and then argue the evidence. So believability. Corroborate. And, ultimately I'm going to end with that number which has about 27 zeros[6] on it. That's pretty telling in my view, 27 zeros. The population of the United States, I think, is around 330 million. So we can imagine that number in our mind. You have three zeros and then you have another three zeros and if you had 33, that's the next, so there's nine digits in that number. Right?
>
> Take it out another twenty numbers. Joe Kukoksky from the D.N.A. lab, based upon his policies or whatever, he didn't use the word match. But I'm going to tell you, don't you think that that's a pretty strong match[?] Don't you think that you could pretty much use the word match[?] What's the population of the world? Population of the world, I think, around 9 billion. If you add three

---

[6] An octillion is a number with 27 zeros following it.

more zeros to that you still have a lot more zeros to get to that 27 zero point.

\* \* \* \*

You can't avoid that scientific evidence. You can't avoid it. Now, it's easy to try and twist that around and I tried to ask him the converse but he didn't say, but I guess if he used the example if you would play the lottery and your chances of winning, you know, weren't that good, you would never win. But I suppose if you knew that you had an octillion chance of winning, if you played the lottery, you would probably be a winner. I think the chances would be pretty darn good.

N.T. Excerpt of Closing Arguments, 8/7/24, at 14-15, 22 (cleaned up).

We discern no abuse of discretion. The prosecutor did not assure the jury that the DNA expert was credible. Instead, the prosecutor argued the fact that 8 octillion is a very large number when talking about chances of winning the lottery, and a very small number when talking about the likelihood of the presence of an individual's DNA in a sample. This argument was based on the evidence of record and derived from proper inferences.

Despite Appellant's assertion to the contrary, the trial court did instruct the jury, prior to closings, that (1) counsel's arguments are not evidence; (2) they are not bound by counsel's recollection of the evidence; and (3) if there is a discrepancy between counsel's recollection and the jury's recollection, then the jury's recollection controls. The trial court reiterated these principles in its jury charge. *See id.* at 11-12. Even if the prosecutor "misstated the facts" as alleged by Appellant, the jury was instructed that their recollection of the facts controls, not counsel's. We must presume the jury followed the

court's instruction, and if there was a discrepancy, the jurors recollection controlled. **See Reid**, **supra**. Accordingly, no relief is due

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 4/8/2026